IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

VOWELL VENTURES,

    Plaintiff,

v.

CITY OF MARTIN,

    Defendant.

H. MAX SPEIGHT, Martin, Attorney for Plaintiff.

MARK G. GALLIEN, Martin, Attorney for Defendant.

*AFFIRMED*

Opinion filed:

Weakley Chancery No. 12325
C.A. No. 02A01-9604-CH-00090

Hon. William B. Acree, Judge

FILED

May 16, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

TOMLIN, Sr. J.

    Vowell Ventures, a partnership (hereafter "Vowell" or "Morris Vowell") filed suit in the Chancery Court of Weakley County against the City of Martin ("City") by a pleading which was appropriately treated by the trial court as a Petition for a Writ of Certiorari, seeking an order from that court directing City to issue Vowell a building permit to erect an office building on a parcel of land owned by Vowell. City had previously denied the permit for the reason that the proposed building was to be constructed over an existing sanitary sewer line and a storm drain. Vowell presents one issue for this court to consider on appeal—whether the trial court erred in denying its application for a building permit. For the reasons hereinafter stated, we affirm the trial court. We also hold that this appeal is frivolous.

    The basic facts—in essence virtually all the facts—are not in dispute. Inasmuch as the parties were unable to file an agreed statement of the evidence, the chancellor prepared and filed one on behalf of the court.

    Morris Vowell and others acquired title to the property in question by warranty deed in 1983. The property, a rectangular vacant lot, fronts on U.S. 45 in the city. The frontage, the width of the property, is 94 feet. The property extends back east from the highway slightly over 250 feet in length. Vowell proposed to construct a 40' X 80' shell for an office building, rectangular in shape, to be set back 50 feet from the east margin

of highway 45. The minimum set back requirement in this area is 25 feet.

While the warranty deed from Vowell's grantor to Vowell makes no mention of any underground utility easement running through the property, it is uncontradicted that two separate underground utility lines—one a sanitary sewer line and the other a storm sewer line—run in a general north-south direction through the property and based upon the planned location of the building would pass directly underneath portions of the proposed structure. For the benefit of the readers of this opinion we have attached a copy of a plat, filed as exhibit 4 at trial below, which shows all the pertinent physical facts relative to this controversy.

Vowell's application for a building permit was denied by Billy Stout, City's Chief Building Inspector, on the ground that City had recently adopted a policy of denying building permits when the building would be located directly over underground utility lines. Stout testified that this policy was enacted to avoid unnecessary repair costs to City for damage to private buildings which could be caused by a failure of one of the sewer lines. After Vowell was unable to obtain a hearing by City's governing board, this petition for certiorari was filed.

At the hearing below, the only witness to testify for plaintiff was Morris Vowell, one of the partners. He testified that there were no recorded easements or grants for either of the underground sewer lines on his property. This is not contested. He also testified that as we have already noted, there was no reference to either sewer line in the deed to Vowell. This is also not contested. He further testified that City had permitted others to construct buildings over underground sewer lines.

City did provide Vowell a compromise plan that would place Vowell's proposed building an additional seventeen feet back from the highway right-of-way, which would clear Vowell's structure from lying above the underground lines. Vowell rejected the offer, stating that such a relocation of the building would make the site "unattractive" for a future sale. Vowell conceded that City's compromise plan would allow him to still pave and/or otherwise make use of the property over the lines and that he had a deep lot with "plenty of room to build on."

On cross examination Vowell readily admitted that potential problems exist in

2

placing a building over a sewer line or a storm drain and that the likelihood of problems increases if a building is placed over both a sewer line and a storm drain. He described potential problems to include a line collapse, a line becoming stopped up, and a line generally needing repairs or replacement. He stated that structural damage to a building could occur if a sewer line under it should collapse. He further testified that a portion of a building over an underground sewer line would have to be removed if the line under it needed repairs or replacement. As a licensed contractor, he voiced the opinion that if a person had a choice it would be better not to build over a utility line. He further stated that he had no knowledge of the condition or age of the utility lines crossing this property over which he desired to construct his new building.

The first of two witnesses to testify for City was James Crocker, City Engineer. He stated that he made the determination not to allow building permits to be issued over existing sewer and storm drainage lines, although he admitted that there was no City ordinance in place specifically prohibiting the issuing of permits under such conditions. Crocker, a licensed civil engineer, testified as to the extensive repairs that had to be made in five instances by City to sewer lines which had buildings and other improvements constructed over them, as well as the extensive costs in some instances that had to be borne by City due to repairs that had to be made to these buildings and improvements because of their location over or in proximity to these underground sewer lines. He further testified that he had served as public works director for City since 1990 and to his knowledge no permits had been issued since that time by City to build over any underground utility lines.

The second and last witness to testify for City was Billy Stout, a certified building inspector who had served in that capacity since 1993. He testified that while he knew of no City code that specifically prohibited the construction of buildings or improvements over sewer or storm drain lines, he denied the permit in this case as it was the practice at that time for the City Public Works Department not to issue a permit under these conditions, primarily to avoid unnecessary repair costs due damage to private buildings that could be caused by a sewer line failure.

He further testified that while there was no specific provision in the Standard

Building Code (1982 edition) that had been adopted and was in effect in City at that time that would specifically prevent the placement of buildings over storm sewer lines, he was of the opinion that he was empowered to do so pursuant to § 103.5 thereof, which reads as follows:

**103.5--REQUIREMENTS NOT COVERED BY CODE**
Any requirement necessary for the strength or stability of an existing or proposed building or structure, or for the safety or health of the occupants thereof, not specifically covered by this code, shall be determined by the Building Official.

On appeal our scope of review in reviewing a trial court's decision pertaining to administrative or legislative action by a local governing body is to ascertain whether the trial court and the governmental entity in the first instance, acted illegally, arbitrarily or capriciously. Neither the trial court nor this court is to substitute their judgment for that of a local governmental body. McCallen v. City of Memphis, 786 S.W.2d 633, 641 (Tenn. 1990).

In our opinion not only did City fail to act in an arbitrary, illegal or capricious manner, but to the contrary it acted not only for the best interest of the City's welfare, but for the best interest of the welfare of Vowell as well. In our opinion the testimony of Morris Vowell standing alone would be sufficient to justify the action of the trial court. While it would appear from some portions of Vowell's testimony that he was seeking to claim an estoppel against City, estoppel was not pled in his complaint. Furthermore, as a general rule estoppel would not lie against a governmental agency. Elizabethton Housing and Development Agency, Inc. V. Price, 844 S.W.2d 614, 618 (Tenn. App. 1992).

Accordingly, the judgment of the trial court is affirmed. In addition, this court is of the opinion that when the principles governing the determination of a frivolous appeal are applied, this is a frivolous appeal, pursuant to T.C.A. § 27-1-122. Upon remand the trial court is directed to hold a hearing to ascertain the amount of reimbursement to City for attorney fees and other legal costs pursuant to T.C.A. § 27-1-122. Costs in this cause on appeal are taxed to Vowell, for which execution may issue if necessary.

4

_____
TOMLIN, Sr. J.


_____
CRAWFORD, P. J. W.S.          (CONCURS)


_____
LILLARD, J.                    (CONCURS)