ELIZABETHTON HOUSING AND
DEVELOPMENT AGENCY,
INC., Plaintiff–Appellant,

v.

Helen PRICE, Defendant–Appellee.

No. 03A01–9112–CV–00443.

Court of Appeals of Tennessee,
Eastern Section.

May 6, 1992.

Application for Permission to Appeal
Denied by Supreme Court Aug. 24, 1992.

John Banks, Banks and Banks, Elizabethton, for plaintiff-appellant.

Bill Hampton, Hampton and Hampton, Elizabethton, for defendant-appellee.

## OPINION

SANDERS, Presiding Judge (E.S.).

The Plaintiff has appealed from a chancery decree denying its recovery of federal housing subsidy payments which it alleges the Defendant was not entitled to receive.

The Plaintiff–Appellant, Elizabethton Housing and Development Agency, Inc., is a public housing agency as defined in the United States Housing Act of 1937 (PHA). As such, it acts as the agency for the U.S. Department of Housing and Urban Development (HUD) in contracting for and paying subsidy for suitable housing for eligible applicants. Section 8 of HUD's housing assistance payments program permits PHA to enter into contracts with owners of suitable houses for eligible applicants and PHA pays directly to the landlords the tenants' subsidized rents from funds furnished by HUD. On June 11, 1987, PHA entered into a contract with Defendant–Appellee Helen Price to rent a house located at 614 Watauga Avenue in Elizabethton to Harley Price for $236 per month, which would be paid directly to Defendant Helen Price, in exchange for which PHA would pay Harley Price's rental subsidy of $233 per month. On the same date Helen Price entered into a lease agreement with Harley Price, leasing to him the house at 614 Watauga Avenue.

The contract between PHA and Mrs. Price designated Mrs. Price as "owner" and Harley Price as "family." As pertinent here, it further provided: "The Owner shall lease the Contract unit to the Family. The Lease to be executed by the Family and the Owner for the Contract unit has been approved by the PHA, and shall be executed in the form approved. The Lease shall contain all provisions required by HUD, and shall not contain any provisions prohibited by HUD.... The obligation of the Owner to comply with these requirements inures to the benefit of the United States of America, HUD, and the PHA, any of which shall be entitled to invoke any remedies available by law to redress any breach or to compel compliance by the Owner.... The Owner agrees that the endorsement on the check: ... (2). shall be a certification by the Owner that: ... (ii) the Contract unit is leased to the Family named in section 1(A) [who is Harley Price]...."

The contract further provides: "Housing assistance payments shall be made by PHA to the Owner under this contract only for the period during which the contract unit is leased and occupied by the Family [Harley Price]...." Also, "The owner ... will not make any transfer in any form of this contract *without the prior written consent of the PHA.*" (Emphasis ours.)

As pertinent here, the lease between Helen Price (Owner) and Harley Price (Family) listed "*Additional family members who reside in the dwelling unit are*: Bobby Price—grandson."

To qualify as a subsidized tenant under Section 8 housing, the applicant must be elderly, disabled, or the head of a family with limited income. The amount of subsidy depends on the applicant's income as

well as the income of the other members of the household. If the primary member of the lease should vacate the unit while the lease is in effect, under certain circumstances the survivor of a previously approved member of the family may remain in the unit. Among those condition are that the surviving member of the family must have been approved by PHA as an additional family member and must have been a resident of the unit at the time the primary family member vacated the unit. No relative of the primary tenant is eligible to occupy the unit after the primary tenant vacates the unit unless he or she had been approved by PHA and was a resident of the unit prior to the primary tenant's vacating it. If there is an approved family member residing in the unit with the primary tenant at the time he vacates the unit, that relative may be approved as a "surviving tenant" by PHA's adding an addendum to the lease. In all other cases, before a person can receive subsidized housing or a landlord can receive payment for subsidized housing payments for a person occupying a unit, the person must make an application with PHA. If PHA finds the applicant eligible for subsidized housing, he or she is put on PHA's waiting list. When a unit becomes available, the applicant is notified by PHA. If the applicant and the owner reach an agreement, then PHA and the owner enter into a contract similar to the one entered into for the payment of Harley Price's rent subsidy and the applicant and owner enter into a lease similar to the one entered into by Helen Price and Harley Price.

On September 3, 1987, Harley Price moved out of the unit rented from Helen Price and went into a nursing home. Bobby Price, the grandson, had vacated the unit some time prior to September 3, so there was no eligible "surviving tenant" to occupy the unit, and the lease terminated.

HUD rules do permit a tenant to vacate a unit on a temporary basis without there being a termination of the lease, but the unit must remain the tenant's primary residence and he must occupy it at least 50% of the time. When Harley Price left the unit in September, he never returned to occupy it again.

After Harley Price went into the nursing home, Helen Price called Sandra Holtsclaw (now Isakson), who was the Section 8 coordinator for PHA, and told her Harley had gone into a nursing home but his stay was only temporary. Based upon the representation that Harley's stay in the nursing home was temporary, PHA continued to send Mrs. Price the rent subsidy checks. PHA also mailed certain checks for payment of utilities to Harley Price. These checks were made payable to Harley Price and Elizabethton Electric System. Since Harley used the same post office box as Helen Price, the checks came into the possession of Mrs. Price and she endorsed them "Harley Price by Helen Price" and used them to pay the utility bills on the unit previously occupied by Harley.

Sometime in October, 1987, Helen Price's daughter, Sue Dugger (now LaDrowski) moved into the unit previously occupied by Harley. During an inspection of the unit by PHA in November, 1989, it discovered that Mrs. Price's daughter, Sue Dugger LaDrowski (Mrs. LaDrowski) was occupying the unit instead of Harley. Upon learning Harley had not been occupying the unit since September, 1987, PHA filed suit to recover $7,318.70 for rent subsidy and utilities payments which Helen Price had allegedly wrongfully received from PHA between September, 1987, and November, 1989.

The Defendant, for answer to the complaint, admitted Mr. Price went into a nursing home in the fall of 1987. She said she contacted PHA at that time and told them she intended to move her daughter, Mrs. LaDrowski, into the rental unit. PHA advised her her daughter qualified as an occupant of the rental unit and authorized her daughter to move into the unit. She admitted she received the subsidy payments but denied her daughter was not an eligible tenant of the property and that she was not entitled to receive the subsidy payments. She also alleged PHA authorized her to endorse the utility checks for Harley Price.

As an affirmative defense, she alleged PHA was estopped to deny her daughter was an eligible tenant of the unit, and PHA had waived its right to recover the subsidy payments because it had permitted her daughter to occupy the premises from October, 1987, to November, 1989.

Upon the trial of the case, the court found the issues in favor of the Defendant and dismissed the complaint.

The Plaintiff has appealed, saying the court was in error. We agree and reverse for the reasons hereinafter set forth.

On the trial of the case, the Defendant relied primarily on her own testimony and the testimony of Sandra Holtsclaw Isakson (Isakson) which was offered through her deposition.

In his determination of the case, the court found from the testimony of Defendant Price that Mrs. Isakson, as former coordinator of Section 8 for PHA, had authorized Mrs. Price to endorse Harley Price's name on checks for utilities and Mrs. Isakson had prepared an addendum to the Harley Price lease making Mrs. Dugger (LaDrowski) an eligible "surviving tenant" of the lease.

■ We cannot agree with the chancellor that the proof supports a finding that Mrs. Isakson authorized Mrs. Price to endorse Harley's name on the utility checks. We also think the chancellor overlooked the fact that if Mrs. Isakson did prepare an addendum to the lease, it was not prepared until approximately one year after Harley had moved out of the unit and Mrs. Isakson was of the opinion that Harley was still a resident of the unit at the time the addendum was prepared.

The testimony of Mrs. Price upon which the court relied for finding Mrs. Isakson authorized her to endorse Harley's name on the utilities checks was as follows: "I called Sandra [Mrs. Isakson] and I told her, I said, we'll have to send this check back, it's in Harley's name, my stepdad. She said, 'No, it's supposed to be.' I said, 'It don't sound right, it sounds like it's not legal, it sounds like forgery.' She got upset with me, she says, 'I know what I'm talking about, it's legal.' And I said, 'Okay, until, I said, I will sign it being it's in my dad's name, I'll sign Harley Price by Helen Price and if anything comes up you explain it.' She got real upset."

In his memorandum opinion, after paraphrasing the testimony of Mrs. Price quoted above, the court concluded as follows: "Agent of Plaintiff replied to the effect that, it's okay, go ahead and sign his name." We fail to glean anything from the testimony of Mrs. Price quoted above that justifies a finding that Mrs. Isakson said: "It's okay, go ahead and sign his name." This is fortified by Mrs. Isakson's testimony that she never had such a conversation with Mrs. Price.

■ In addressing his finding that Mrs. LaDrowski (Mrs. Price's daughter) had been placed on Harley's lease by an addendum, the court said: "[T]his Court is persuaded that the Defendant's daughter did complete all of the paper work and that the survivorship document or the whatever document it takes to make this change consistent with the rules and regulations of the Plaintiff was accomplished and evidence of that fact is that, I think it's on page eighteen or nineteen of Ms. Isakson's deposition. She recollects the lease addendum being completed and then another evidence of that factor is the birth verification document that was entered in evidence here today, all of which would have been documents that would have been consistent with the Defendant's daughter, Ms. LaDrowski, taking Harley Price's place on this Section 8 rent subsidy contract."

The proof shows that to be placed on a lease creating "Survivorship Tenant" rights, the party applying must furnish PHA a birth certificate or an affidavit as to date of birth. The proof also shows that Mrs. LaDrowski did furnish PHA an affidavit stating she was born 7/6/56 in Elizabethton, Tenn. The proof also shows that Mrs. Isakson prepared an addendum to the lease to place Mrs. LaDrowski on the lease at or about the same date the affidavit of birth was made. This affidavit, however, was not made until August 29, 1988, which lacked only five days of being a year after

Harley had vacated the unit. The proof also shows that at the time Mrs. Isakson prepared the addendum she thought Mrs. LaDrowski was living in the rental unit with Harley Price.

■ The error of the chancellor was in finding that "whatever document it takes to make this change consistent with the rules and regulations of the Plaintiff was accomplished...." The chancellor apparently overlooked the fact that to meet the rules and regulations of HUD (1) The primary tenant of the lease (Harley) must be residing in the unit at the time the additional family member is added to the lease; (2) The person to be added to the lease must be living in the unit with the primary tenant (Harley) at the time he or she is added to the lease; (3) The lease must be in full force and effect; (4) If these prerequisites are not met, an addendum to a pre-existing lease will not suffice to create rent subsidy benefits for the party seeking to be added to the lease.

In her brief, Defendant argues PHA waived any objection it had to Mrs. La-Drowski's living in the unit because Mrs. Isakson assured Defendant this was permissible. This would also infer PHA had waived its requirement that the original lease remain in full force and effect for an addendum to be effective.

■ To waive a requirement, the waiving party must know all relevant facts and intend to waive the requirement.

> Waiver is a voluntary relinquishment or abandonment of a known right or privilege. (Citations omitted.) Thus, when an individual does not know of his rights or when he fails to fully understand them, there can be no effective waiver of those rights.

*Faught v. Estate of Faught,* 730 S.W.2d 323, 325–26 (Tenn.1987).

Mrs. Isakson could not have waived the PHA requirement. Mrs. Isakson testified she thought Harley was living in the unit at least 50% of the time. Defendant herself testified she did not inform Mrs. Isakson until April, 1988, that Harley was permanently gone from the unit. By that time the primary lease had run out and Mrs. Isakson could not revive it by attaching an addendum to it.

■ Defendant also contends PHA is estopped to deny that Mrs. LaDrowski is not a qualified tenant because it, through Mrs. Isakson, assured Defendant LaDrowski was qualified. Estoppel, however, is imposed upon a government agency only under the most exceptional circumstances.

> The rule in this State is that the doctrine of estoppel generally does not apply to the acts of public officials or public agencies. (Citations omitted.) ... Public agencies are not subject to equitable estoppel or estoppel in pais to the same extent as private parties and very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions.

*Bledsoe County v. McReynolds,* 703 S.W.2d 123, 124 (Tenn.1985). After examining cases found to involve "exceptional circumstances," the *McReynolds* court concluded, "It is significant to observe that in those Tennessee cases where estoppel was applied, or could have been applied, the public body took affirmative action that clearly induced a private party to act to his or her detriment, as distinguished from silence, non-action or acquiescence." *Id.* 703 S.W.2d at 125.

■ While Defendant is alleging an affirmative act by Mrs. Isakson, we deem it appropriate to point out the "exceptional circumstances" wherein estoppel may be imposed on a governmental agency. Estoppel is appropriate against government agencies only when the agency induced the party to give up property or a right in exchange for a promise. Thus, estoppel is appropriate when the facts clearly evidence an implied contract, *Gas-light Co. v. Memphis,* 93 Tenn. 612, 30 S.W. 25 (1894); *Trull v. City of Lobelville,* 554 S.W.2d 638 (Tenn. App.1976); *Brown v. City of Manchester,* 722 S.W.2d 394, 397 (Tenn.App.1986), or when the government induces a private party to relinquish a cause of action, *State ex rel. Ammons v. City of Knoxville,* 33 Tenn.App. 622, 232 S.W.2d 564 (1950).

In the case at bar, Mrs. Isakson did neither; she only stated Mrs. LaDrowski was a qualified applicant for Section 8 housing by virtue of an addendum. This does not estop PHA from insisting Mrs. LaDrowski was not a qualified surviving tenant, because the addendum was invalid. Because Harley Price had terminated his tenancy on September 3, 1987, Mrs. La-Drowski could not qualify as a "surviving tenant" by virtue of an addendum executed in August, 1988.

The issues are found in favor of the Appellant. The decree of the chancellor is reversed and the case is remanded to the trial court for the entry of a decree in keeping with this opinion and for passing on Plaintiff's prayer in its complaint for pre-judgment interest. The cost of this appeal is taxed to the Appellee.

GODDARD and McMURRAY, JJ., concur.