WILLIAM H. THOMPSON, JR.,       )
and COUNTRY MAID FARMS,         )
INCORPORATED, a Tennessee       )
Corporation,                    )
                                )
    Plaintiffs/Appellants,     )    Appeal No.
                                )    01-A-01-9808-CH-00438
v.                              )
                                )    Davidson Chancery
DEPARTMENT OF CODES             )    No. 98-71-II
ADMINISTRATION,                 )
METROPOLITAN GOVERNMENT )
OF NASHVILLE and DAVIDSON       )
COUNTY,                         )
                                )
    Defendant/Appellee.        )

**FILED**

September 1, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. McCOY, CHANCELLOR

DAVID O. HUFF
Washington Square, Suite 204
214 Second Avenue, North
Nashville, Tennessee  37201
    ATTORNEY FOR PLAINTIFFS/APPELLANTS

THOMAS G. CROSS
Metropolitan Attorney
204 Metropolitan Courthouse
Nashville, Tennessee  37201
    ATTORNEY FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

This case involves the refusal of the Metropolitan Department of Codes Administration ("the Department") to issue building permits to the petitioner/appellant landowner. Planning to divide and sell his land, the petitioner made preparations to subdivide this land pursuant to the Department's advice on how to avoid regulation by the Metropolitan Planning Commission ("MPC"). However, due to a new interpretation of existing statutory law, the petitioner's preparations, once completed, were no longer adequate and the Department deemed that the land must undergo review before the MPC as a subdivision. Consequently, the zoning administrator of the Department denied the petitioner the building permits and the petitioner brought suit claiming first that the division of land was not a "subdivision" as that term is defined by statute. Furthermore, the petitioner contended that the zoning administrator's application of the newly-interpreted law to him violated his constitutional rights to equal protection and due process and effected against him the application of a retrospective law. In addition, the appellant claimed that the Department should be equitably estopped from refusing to issue the building permits. The trial court granted the Department's motion for involuntary dismissal of the petitioner's case. We affirm the decision of the trial court on all issues.

I.

Petitioner William Thompson is the sole owner of Petitioner Country Maid Farms which consists of two tracts of land in north Davidson County. He has utilized this land over the years as a dairy farm. In 1995, Mr. Thompson decided to develop this land into residential lots for the purpose of selling them.

Mr. Thompson initially met with John Bracey of the MPC who told him that if the lots were more than five acres, the MPC would not interfere. On December 14, 1995, Mr. Thompson and his friend Dan Barge, an engineer, met with Sonny West, the zoning administrator for the Department, to discuss the

2

division of this property. Mr. West advised the petitioner that if each lot had five or more acres of land, fifty feet of public road frontage per lot, and no water or utility extensions, the petitioner would receive building permits. In other words, if these criteria were met, Mr. Thompson would not have to obtain the MPC's approval to subdivide his property. On four occasions in 1996, Mr. West confirmed his advice, three times over the phone and once in person.

Mr. West's testimony was in accord with Mr. Thompson's regarding the advice given Mr. Thompson at the December 14, 1995 meeting and thereafter. He clarified that he told Mr. Thompson what would be required to remain outside of MPC jurisdiction. Mr. West testified that his office had taken this same legal position with everyone who inquired up until the time that the law was clarified by an informal opinion, issued on March 28, 1997 by the Metro Legal Department. He stated that since his office became aware of the new interpretation of the law by the informal opinion, it had not issued any permits to people who were not in compliance with the law as re-interpreted by this informal opinion.

It is not disputed that after receiving the initial advice from Mr. West, Mr. Thompson began the process of preparing his land for development which lasted for the next 18 months. He prepared a declaration of restrictive covenants and maintenance agreement, an access easement and a declaration of sanitary sewer and sewer service easement and had each recorded at the Register's office. He obtained legal street and postal addresses for the lots. He purchased water taps for the lots. He had a road constructed. He contracted with NES to install telephone poles. In addition, Mr. Thompson made physical improvements to the land. Mr. Thompson testified that as of December 31, 1997, he had spent about $88,795 on developing this property.

After completion of this process in November of 1997, Mr. Thompson took the recorded deeds to Mr. West to obtain the building permits at which time Mr. West advised him that the Department could no longer issue the permits. As stated, the Department's change of position was the result of an informal memorandum opinion issued on March 28, 1997 by a staff member of Metro's

Department of Law. In this opinion, the legal department opined that prior zoning administration practice was not consistent with the law. In pertinent part, the informal opinion concluded that the division of land into lots, regardless of size, does constitute a subdivision pursuant to Tennessee Code Annotated sections 13-3-401(4)(B) and 13-4-301(4)(B) if any new utility extensions (e.g., water, sewer, electric power, or cable) or new road construction is necessary. Hence, subdivision regulations would not apply if each planned lot has the required frontage along and direct driveway access to an existing public street and will obtain utilities only through individual service lines connecting directly to existing mains. However, where proposed divisions of land show access from new lots to a public street through a new road or common easement or new utility lines serving more than one lot, the statute mandates subdivision review.

Mr. Thompson testified that he would never have begun development of his property had he been advised initially that it would be necessary to comply with subdivision regulations as this would not have been a profitable venture. Mr. Thompson had spent approximately $89,000 on the property at the time of trial. He testified that, in the wake of the new interpretation, the improvements will not have enhanced the value of the property unless he completes the development process. He estimated that it would take another $200,000 to bring the land into subdivision compliance according to the original plan. Mr. Thompson testified that he can not even graze cattle on the property in its present state as he had been able to before making the changes.

Walter Davidson, the engineer who calculated the cost estimates of preparing Mr. Thompson's property in different ways, testified that it would have cost Mr. Thompson approximately $300,000 more to develop a public road meeting the standards in the subdivision regulations rather than the private road that was already developed. He testified in detail as to the reasons for this increased cost. He agreed that a public road was more durable and safe. It was Mr. Davidson's opinion that in order to comply with subdivision regulations, Mr. Thompson would have to spend $2000 or $3000 more per lot and only get $1000 more for the purchase price of each lot.

Mr. Thompson testified that after he was denied the building permits by Mr. West, he appealed to the Board of Zoning Appeals and sent a letter to Terrance Cobb of the Metropolitan Codes Department. Mr. Cobb responded by calling Mr. Thompson at home and explaining that he would look into the matter; however, he later told Mr. Thompson that he could not help him. There was never a hearing held before the Board of Zoning Appeals and the record before us today was formed in the chancery court.

Mr. Thompson filed a "Petition for Writ of Certiorari, and for Mandamus, and for Declaratory Judgment" in the Davidson County Chancery court. In this petition, he claimed that the Department's refusal to issue him the building permits is illegal, arbitrary and capricious in that the change in the Department's long-standing policy and practice came after the approval of Mr. West and with no prior notice to Mr. Thompson. This, Mr. Thompson argued, constitutes a violation of his constitutional rights, specifically the rights of equal protection and due process as guaranteed by both the state and federal constitutions. In addition, Mr. Thompson asserted that the Department's refusal to issue the permits constitutes, in practice and application, a retrospective law violative of Article 1, Section 20 of the Tennessee Constitution. Finally, Mr. Thompson's petition asserted that he had relied on the prior approval of the Department to his detriment.

After the petitioners presented their case in chief, the trial court dismissed the action pursuant to Tenn. R. Civ. P. 41.02(2). From the bench, the court stated its reasoning as follows: "regardless of the Department's practice, the law is and has been that those in [the petitioners'] position must comply with the statutory requirements for a subdivision." The court found that cases cited by the petitioners to support the equitable estoppel argument were distinguishable. The court then taxed the costs against the petitioners.

II.

As a preliminary matter, we must determine what type of proceeding Mr.

5

Thompson brought below. Mr. Thompson went to the correct person in the Department of Codes Administration for the issuance of building permits which was Sonny West, the zoning administrator. After being denied the permits, he protested the denial to Terrance Cobb in the same department who ultimately told him that Sonny West was the final authority. When asked if he appealed Mr. West's decision, Mr. Thompson testified that he did appeal to the Board of Zoning Appeals. However, from the record, it is evident that the Board of Zoning Appeals never heard the case. Apparently, this lawsuit in the chancery court was filed simultaneously with the appeal to the Board. A writ of certiorari did issue from the chancery court to Mr. Cobb which ordered him "to make, certify and transmit to this Court the entire record of the proceedings before the Department of Codes relative to its decision to deny petitioners herein the building permits requested as more fully set out in the Petition for Writ of Certiorari." However, there is nothing in the record from any proceeding in the Department of Codes nor any indication that any proceeding took place which would have been the basis for such a record.

Mr. Thompson's complaint was in the form of a petition for writ of certiorari, for writ of mandamus and for declaratory proceeding. In this petition, he sought a writ of certiorari, a declaration that the Department's refusal to issue the building permits was arbitrary and capricious, an order directing Mr. West to issue the building permits, and a declaration that the Department's interpretation of the ordinance was an unenforceable retrospective law. Without reference to the type of proceeding or the attendant standard of review, the trial court dismissed the case after hearing the petitioners' proof.

The distinction between the alternative procedures available for the judicial review of actions taken by either county or municipal authorities is best summarized by the following excerpt from Tennessee Jurisprudence:

> § 4. Actions. -- Generally. -- An action for declaratory judgement, rather than a petition for certiorari, is the proper remedy to be employed by one who seeks to invalidate an ordinance, resolution or other legislative action of a county, city or other municipal legislative authority enacting or amending zoning legislation. . . .

6

> The remedy of certiorari will continue to be the proper remedy for one who seeks to overturn a determination of a board of zoning appeals. This distinction in remedies is made because the determinations made by a board of zoning appeals are administrative determinations, judicial or quasi-judicial in nature, and are accompanied by a record of the evidence produced and the proceedings had in a particular case, whereas the enactment of ordinances or resolutions, creating or amending zoning regulations, is a legislative, rather than an administrative action and is not ordinarily accompanied by a record of evidence, as in the case of an administrative hearing.

26 *Tennessee Jurisprudence* Zoning § 4, p. 232 (1993); *see also Hoover, Inc. v. Metropolitan Bd. of Zoning Appeals*, 955 S.W.2d 52, 54 (Tenn. App. 1997) ("The vehicle for reviewing decisions of local boards of zoning appeals is the common-law writ of certiorari.").

Thus, administrative determinations, judicial and quasi-judicial in nature, which are accompanied by a record of the evidence produced and the proceedings had are properly reviewed by a writ of certiorari. *Fallin v. Knox County Bd. of Com'rs*, 656 S.W.2d 338, 342 (Tenn. 1983) (determining that an action for declaratory judgment was proper where plaintiff sought to invalidate a resolution of the county board of commissioners purporting to amend a zoning ordinance). It is well established that the decision to or not to grant a building permit is an administrative determination. *Harrell v. Hamblen County Quarterly Court*, 526 S.W.2d 505, 509 (Tenn. App. 1975) ("The issuing of permits has often been held to be an administrative or ministerial act and the person charged with the duty of issuing permits must follow literally the provisions of the ordinance.") In another case, our supreme court quoted a well-known treatise as follows:

> Municipal legislative bodies may reserve to themselves, where they do so by an ordinance containing a rule or standard to govern them, the power to grant or deny licenses or permits. This may be done in zoning matters, where it is not contrary to a state zoning or enabling act, and where the zoning ordinance likewise contains sufficient standards to govern the municipal council. Thus, a zoning ordinance vesting in the municipal council the power to determine whether a building permit should be granted ... is regarded as administrative, rather than legislative in character.

*McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990) (quoting 8A

E. McQuillin, *The Law of Municipal Corporations*, § 25.217 at 160-61(3d ed. 1986)).

In the instant case, the nature of the decision below, the denial of a building permit, indicates that the appropriate means of review is the common law writ of certiorari. However, the decision was not appealed to the Board of Zoning Appeals[1] and did not come up to the chancery court accompanied by a record. Since Mr. Thompson failed to exhaust his administrative remedies by appealing the decision of the zoning administrator to the Board of Zoning Appeals, he can not now file a petition for a writ of certiorari. *See Robison v. Metropolitan Government,* No. 01-A-01-9105-CH-00178, 1992 WL 205268 (Tenn. App. 1992).

In light of the fact that Mr. Thompson abandoned his appeal to the Board of Zoning Appeals thereby precluding review by certiorari, the appropriate avenue by which this matter can be resolved is a declaratory judgement pursuant to section 29-14-103 of the Tennessee Code. Mr. Thompson's petition in the chancery court included a request that the court issue a declaratory judgment declaring "the refusal to issue building permits as illegal, arbitrary and capricious, it being in totally contrary of long-standing Department policy and practice and in violation of petitioners' constitutional rights of equal protection and due process of laws." As we have established, a declaratory judgment is not the proper means for reviewing a zoning administrator's decision for arbitrariness or capriciousness. However, the constitutionality of law can be determined by a declaratory action. *See Industrial Dev't Bd. v. First U.S. Corp.,* 407 S.W.2d 457, 219 Tenn. 156 (1966). In addition, there is authority for this court to issue a declaratory judgment on the issue of whether the division and

---

[1]Mr. Thompson certainly had the right to such an appeal. Section 17.40.180 of the Zoning Regulations of the Metropolitan Government of Nashville address the powers of the Board of Zoning Appeals and provides as follows:

> A. Administrative Appeals. Pursuant to Section 13-7-207(1), Tennessee Code Annotated, the board shall hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator or the urban forester in carrying out the enforcement of this zoning code, whereby it is alleged in writing that the zoning administrator or the urban forester is in error or acted arbitrarily.

*See also Robison*, 1992 WL 205268 at *5.

sale of certain property constitutes a subdivision under the Tennessee Code. *See Loftin v. Langsdon*, 813 S.W.2d 475 (Tenn. App. 1991).

III.

As a declaratory action, the first issue is whether the division of Mr. Thompson's property does indeed fall within the definition of a subdivision such that local subdivision review is mandatory. Section 13-4-301(4)(B)[2] of the Tennessee Code provides that "'[s]ubdivision' means . . . the division of a tract or parcel of land into two (2) or more lots, sites, or other divisions requiring new street or utility construction . . . for the purpose, whether immediate or future, of sale or building development, and includes resubdivision and when appropriate to the context, relates to the process of resubdividing or to the land or area subdivided." The informal opinion from the office of the Metro Legal Department specifically addressed a particular division of land known as a "flag development" where each lot has driveway access to a public road but only through a shared easement which is common to all of the lot owners. The informal opinion's conclusion was that "[t]he division of land into tracts of five acres or greater where access to public streets and public utilities will be provided along a newly constructed or improved private or shared drive or easement falls within the definition of a 'subdivision'" as quoted above from section 13-4-301(4)(B).

At oral argument, Mr. Thompson's attorney conceded that the informal opinion was correct. He contends however that the proposed division of his property does not fall within the definition of "subdivision" as clarified in that opinion. We disagree. In focusing in his argument on the fact that the division of his property did not require new public water or sewer utility construction,

---

[2]Section 13-3-401(4)(B) provides the exact definition of subdivision in the context of regional planning. Section 11.504 of the Charter of the Metropolitan Government of Nashville and Davidson County grants to the MPC all the powers, duties and responsibilities granted to both municipal and regional planning commissions under the state zoning and planning enabling statute. It is clear that Mr. Thompson's property, which was in Davidson County was within the jurisdiction of the MPC. *See* Subdivision Regs of the metro Planning Comm'n 1-3 (1997). Thus, the issues in this case involve the definition of subdivision and other pertinent statutes found under the municipal regulations in part 3 of Title 13 of Tennessee Code Annotated.

Mr. Thompson misses the point of the informal opinion. For purposes of Mr. Thompson's proposed division of land, the relevant part of the informal opinion modified the prior interpretation of the statute as to the question of what constitutes a "new street," not what constitutes "new utility construction." That opinion determined that the construction of a private driveway/street which served as a common easement in a "flag development" qualified as a "new street" for purposes of the subdivision definition. There is no dispute that the development proposed by Mr. Thompson is a flag development with a private driveway/street easement through which all lots are reached. Therefore, we can only conclude that this proposed division amounts to a subdivision as defined by the Tennessee Code.

Mr. Thompson's second contention is that even if a proposed division comes within section 13-4-301(4)(B)'s definition, it does not necessarily follow that the local subdivision regulations apply. He argues that the state statute is an enabling statute which permits the local governing body, the MPC, to create the subdivision regulations it deems necessary, and the MPC has the prerogative to not require that certain divisions of land be burdened with the local subdivision regulations. Mr. Thompson insists that the definition of "subdivision" in the MPC's subdivision regulations is more narrow than that in the code and does not encompass his proposed division.

We cannot agree with Mr. Thompson's assessment of the law. Tennessee law assigns full responsibility for the process of subdivision regulation, development, application and administration to regional and municipal planning commissions. Tenn. Code Ann. § 13-4-303 (1992). The law is clear that if the statutory definition of "subdivision" applies to a division of land, then approval of the MPC is necessary before a subdivision plan can be recorded. The code provides as follows:

> (a) From and after the time when the planning commission of any municipality shall have adopted a master plan which includes at least a major street plan, or shall have progressed in its master planning to the stage of the making and adoption of a major street plan, and shall have filed a certified copy of such major street plan in the office of the county register of the county in which the municipality is located, **no plat of a subdivision of land lying**

10

**within the municipality shall be filed or recorded until it shall have been submitted to and approved by the planning commission and such approval entered in writing on the plat by the secretary of the commission.**

Tenn. Code Ann. § 13-4-302 (1992); *see also* § 13-3-402 (articulating a similar prohibition for county registers with respect to recording subdivision plats for purposes of regional planning). Subdivision, as used in this statute, is defined by section 13-4-301(4)(B).

This court's opinion in *Loftin v. Langsdon* supports our conclusion that divisions of land which fall within the code's definition of "subdivision" must be submitted to the MPC for approval. 813 S.W.2d 475 (Tenn. App. 1991). There, a landowner petitioner made major improvements to his land in preparation for the division and sale of lots. *Id.* at 476. The local director of community development noticed the lots for sale in the newspaper and contacted the landowner to advise him that he could not proceed without approval from the planning commission. *Id.* The landowner then commenced an action in the chancery court asking that court for a declaratory judgment that the division of his property did not constitute a subdivision under section 13-3-401(4)(B) and thus did not come under regulation by the planning commission. *Id.* at 477. Looking to rules of statutory interpretation, the court found that the landowner's actions relating to the road and utility improvements on the land placed him within the subdivision statute. *Id.* at 479-80. The issue in *Loftin* hinged upon what it meant for new street or utility construction to be "required." However, implicit in the court's reasoning was that once it was found that new street or utility construction was "required" thus placing a division within the ambit of section 13-3-401(4)(B), that division would come under regulation by the MPC.

IV.

We next address the constitutionality of applying the law, as newly interpreted by the informal opinion, to the division of Mr. Thompson's property. Mr. Thompson argues in effect that the enforcement of this law against him violates his rights to equal protection, due process and freedom from

11

retrospective laws. We disagree, finding that none of Mr. Thompson's constitutional rights have been compromised by applying the law to him.

Turning first to the equal protection challenge, we find that Mr. Thompson has failed to show that he has been treated differently from those persons similarly situated. *See Evans v. Steelman*, 970 S.W.2d 431, 435 (Tenn. 1998) (citing *Tennessee Small School Sys. v. McWherter*, 851 S.W.2d 139, 153 (Tenn.1993) ("The concept of equal protection guarantees that persons similarly situated shall be treated alike."). In fact, the testimony at trial was to the effect that, prior to the issuance of the informal opinion, others seeking building permits under facts akin to those of this case were not required to submit to subdivision review. Significantly, after the informal opinion was issued, anyone seeking a permit in the same situation has been required to undergo subdivision review. Mr. West's uncontroverted testimony was that certain developers had been required to subject their divisions of property to subdivision review in the midst of development, after construction was well under way. He testified of one instance where, while the department did not retract the building permits which already had been issued, it refused to issue any more until the development went before the MPC for review which resulted in the developer being made to rebuild a road.

Likewise, Mr. Thompson has not shown that he has been deprived of constitutional due process. Mr. Thompson's claim is apparently a substantive rather than a procedural due process claim: he does not contend that the department could not deny the building permits without first according him fair notice and hearing. Rather, Mr. Thompson maintains that he could not constitutionally be denied the permits at all. He thus asserts that he obtained a categorical substantive due process right to building permits once he had sought and followed the advice of the department to secure such permits. *See Haskins v. City of Chattanooga*, 877 S.W.2d 267, 269 (Tenn. App. 1993) (citing *Charles v. Baesler*, 910 F.2d 1349, 1352-53 (6th Cir.1990)). We disagree with Mr. Thompson's substantive due process challenge.

"Substantive due process 'affords only those protections "so rooted in the traditions and conscience of our people as to be ranked fundamental." ' " *Haskins*, 877 S.W.2d at 269 (citing *Charles*, 910 F.2d at 1352-53); *see Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 2341-42, 2345, 105 L.Ed.2d 91 (1989). The threshold question for a substantive due process claim is whether the claimant has a property interest entitled to constitutional protection. In order for a right to be entitled to constitutional protection, it must be more than a unilateral expectation or an abstract need or desire. The property interest must be created by an independent source, and the person claiming the right must demonstrate a legitimate claim of entitlement to it. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L.E.2d 548 (1972). In the instant case, Mr. Thompson does not have a property interest in the zoning administrator's erroneous interpretation of state law. Such a right could not be derived from an independent source because state law - the very independent source involved - requires him to obtain approval of his subdivision.

If a fundamental right is not involved, "the test for determining whether a statute comports with substantive due process is whether the legislation bears 'a reasonable relation to a proper legislative purpose' and is 'neither arbitrary nor discriminatory.'" *Newton v. Cox*, 878 S.W.2d 105, 111 (Tenn. 1994) (citing *Nebbia v. New York*, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934) and *National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985)). To reiterate, the challenge here is not to the reinterpretation of the statute in and of itself, but rather to its application to Mr. Thompson. As noted in our discussion of Mr. Thompson's equal protection issue, the application of this newly interpreted law to Mr. Thompson's division of land was neither arbitrary nor discriminatory. Moreover, the application of this law, as newly interpreted, bears a reasonable relation to a proper legislative purpose in regulating subdivisions, the General Assembly's desire to "provide for the harmonious development of the municipality and its environs, for the coordination of streets within subdivisions with other existing or planned streets or with the plan of the municipality or of the region in which the municipality is located, for adequate open spaces for traffic, recreation, light and air, and for a distribution of population and traffic

13

which will tend to create conditions favorable to health, safety, convenience and prosperity." Tenn. Code Ann. § 13-4-303(a) (1992); *see Loftin v. Langsdon*, 813 S.W.2d 475, 479 (Tenn. App. 1991) (noting that "[t]he purpose of Planning Commission regulations dealing with road construction is to insure that the roads are built in a manner such as will protect the health, safety, and welfare of the citizens. . . . [I]t is obvious that the intent of the legislature was that roadways traveled by the general public be safe.").

Mr. Thompson's final constitutional argument involves the prohibition against the imposition of a retrospective law in violation of Article 1, § 20 of the Tennessee Constitution. This section provides "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made." Article 1, § 20 does not forbid every retroactive law. Rather, for purposes of this constitutional provision, the term "retrospective laws" has been defined by the Tennessee Supreme Court as those laws "which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed." *Morris v. Gross*, 572 S.W.2d 902, 907 (Tenn. 1978); *see also Owens v. Truckstops of Am.*, 915 S.W.2d 420, 427 (Tenn. 1996). Mr. Thompson argues here that the Department's action imposes new duties and new obligations on him which did not exist when Mr. West advised him that his project did not fall within the regulatory domain of the MPC.

While it is true that compliance with the new interpretation of the statute demands greater obligations on the part of Mr. Thompson, it does not do so in the context of a transaction which has already passed. In other words, while Mr. Thompson was advised of the previous law, he was not nor could not have been guaranteed that this would be the law forever. Certainly before the permits were granted and the buildings constructed, there was no transaction. Significantly, along with any others who desire to divide and sell their land in the wake of the new interpretation, Mr. Thompson can still do so as long as he brings his division into compliance with the MPC's subdivision regulations.

V.

Lastly, we turn to Mr. Thompson's contention that principles of equitable estoppel bar the MPC from applying the law, as newly interpreted, to his proposed division of land. The courts are clear that "[p]ublic agencies are not subject to equitable estoppel or estoppel in pais to the same extent as private parties and very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions." *Bledsoe County v. McReynolds*, 703 S.W.2d 123, 124 (Tenn. 1985); *Paduch v. City of Johnson City*, 896 S.W.2d 767, 772 (Tenn. 1995). After a review of the case law, the court in *Bledsoe County* observed "that in those Tennessee cases where estoppel was applied, or could have been applied, the public body took affirmative action that clearly induced a private party to act to his or her detriment, as distinguished from silence, non-action or acquiescence. " *Bledsoe County*, 703 S.W.2d at 125.

The supreme court's opinion in *Paduch* is instructive as to what action by a public body amounts to "inducement." That opinion arose out of the defendant city's refusal to issue to the plaintiff landowners building permits for the construction of buildings on their land until they paved a portion of a road accessing the property. *Paduch*, 896 S.W.2d at 768. After being given this ultimatum, the landowners paved the road at their own expense and the city issued the building permits. *Id.* However, the landowners brought suit seeking in part to recover the money they had spent paving what they alleged was a public street. *Id.* Despite the fact that the city wrongfully conditioned the building permits upon the landowners paving the street, the supreme court found that the landowners were not affirmatively induced to improve the public street. *Id.* at 773. In other words, the city's action in telling the landowners that they needed to pave the street to procure a building permit did not amount to inducement.

This court has held that the type of inducement necessary to impose estoppel on a governmental agency is that which leads to an implied contract between a party and the governmental agency or causes the party to relinquish a cause of action. *Elizabethton Hous. and Dev. Agency, Inc. v. Price*, 844 S.W.2d 614, 618 (Tenn. App. 1992). In *Price*, the defendant landlord defended a suit initiated against her by the local public housing agency (PHA) for

15

recovery of funds which the PHA felt the landlord had wrongfully accepted from the PHA. The PHA claimed that the landlord had accepted money from the PHA after allegedly violating the PHA's rules. The landlord, on the other hand, argued that a PHA employee had assured her that her actions were permissible and within the rules. While the defendant landlord alleged an affirmative act by an employee of the PHA, the court did not deem this the type of "exceptional circumstances" wherein estoppel may be imposed on a governmental agency. The court concluded as follows:

> Estoppel is appropriate against government agencies only when the agency induced the party to give up property or a right in exchange for a promise. Thus, estoppel is appropriate when the facts clearly evidence an implied contract, *Gas-light Co. v. Memphis*, 93 Tenn. 612, 30 S.W. 25 (1894); *Trull v. City of Lobelville*, 554 S.W.2d 638 (Tenn.App.1976); *Brown v. City of Manchester*, 722 S.W.2d 394, 397 (Tenn.App.1986), or when the government induces a private party to relinquish a cause of action, *State ex rel. Ammons v. City of Knoxville*, 33 Tenn.App. 622, 232 S.W.2d 564 (1950).

*Price*, 844 S.W.2d at 618.

The Department's action in this case does not amount to the type of inducement that gives rise to estoppel. The Department told Mr. Thompson how to comply with the law as it was then interpreted. It did not affirmatively induce Mr. Thompson to make changes to his property. Furthermore, the Department's action did not lead to an implied contract between Mr. Thompson nor did it cause Mr. Thompson to relinquish a cause of action. Mr. Thompson still has the ability to develop his land by complying with the law as it is currently interpreted. We conclude that the facts in this case do not present the exceptional circumstances required to invoke equitable estoppel against a public agency.

VI.

The decision of the trial court is affirmed. We find that the division of property proposed by Mr. Thompson does fall within the statutory definition of subdivision found in section 13-4-301(4)(B) of the Tennessee Code. As a subdivision, this division of land must undergo local subdivision review by the

16

MPC. Finally, despite the fact that Mr. Thompson was advised pursuant to an earlier interpretation of the law, we do not find that the application to Mr. Thompson of this statute, as newly interpreted by the informal opinion of the Metro Legal Department, in any way violates Mr. Thompson's constitutional rights. Furthermore, we do not find that the doctrine of equitable estoppel can be invoked to bar the Department from applying to Mr. Thompson the law as clarified by the informal opinion.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
PATRICIA J. COTTRELL, JUDGE