**Ruth M. COE, Plaintiff/Appellee,**

v.

**CITY OF SEVIERVILLE, Defendant/Appellant.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Jan. 26, 2000.

Certiorari Denied by Supreme Court June 12, 2000.

Linda J. Hamilton Mowles, Lewis, King, Kreig, Waldrop & Catron, P.C., Knoxville, TN, for the appellant.

Lawrence P. Leibowitz, Melissa A. Ashburn, Knoxville, TN, for the appellee.

## OPINION

SWINEY, J.

Ruth Coe ("Plaintiff") filed this complaint seeking an order from the Sevier County Chancery Court directing the City of Sevierville ("Defendant") to issue a permit for her to demolish and reconstruct an outdoor advertising sign on her property, pursuant to T.C.A. § 13–7–208. The Chancellor ordered Defendant to issue the permit. The issues raised in this appeal are: (1) whether the complaint should have been dismissed because Plaintiff failed to exhaust her administrative remedies, and (2) whether Plaintiff's sign as a pre-existing non-conforming structure is entitled to the protection of T.C.A. § 13–7–208, the "Grandfather Statute." For the reasons herein stated, we reverse the judgment of the Trial Court and remand the case to the Trial Court for further proceedings consistent with this Opinion.

### BACKGROUND

Plaintiff owns Coe's Greenhouse on U.S. Highway 441 in Sevierville and advertises the business with an outdoor sign which stands 30 yards south of the greenhouse on an adjacent parcel of land also owned by Plaintiff. The sign has been at that location since July 1970. The sign is a wooden structure eight feet high and eight feet wide. The sign was erected when there were no zoning regulations on either of Plaintiff's two adjoining lots.

In 1972, the Billboard Regulation and Control Act of 1972, T.C.A. § 54–21–101, *et seq.*, was enacted by the Tennessee Legislature. That statute requires a Department of Transportation permit for the erection of signs such as Plaintiff's which are erected adjacent to primary highways in Tennessee. The statute exempts signs advertising activities conducted on the property on which the sign is located. T.C.A. § 54–21–104 requires that signs may not be constructed, erected, operated, used or maintained within 660 feet adjacent to primary highways in Tennessee unless a state permit is obtained. T.C.A. § 54–21–105 provides that any person who fails to comply with § 54–21–104 "shall remove the same [billboard] immediately. Such failure shall render the outdoor advertising a public nuisance and subject to immediate disposal, removal or destruction." It is undisputed that Plaintiff's sign is subject to the requirements of T.C.A. § 54–21–101, *et seq.*

In 1973, the Tennessee Legislature enacted T.C.A. § 13–7–208, Enforcement of Ordinances–Remedies, commonly known as the "Grandfather Statute." This statute protects property owners from the effect of a change in zoning requirements which would otherwise render their use of real property a non-conforming use. It permits pre-existing non-conforming uses to exist and expand despite later-enacted municipal ordinances.

In 1978, the two lots on which Coe's Greenhouse and Coe's Greenhouse sign are located were annexed, along with other property, into the City of Sevierville. Sevierville Zoning Ordinance, § 409.291 prohibits advertising signs which advertise a business not conducted on the premises upon which the sign is actually located. From 1970 until 1995, Plaintiff never applied for any state or city permit for the Coe's Greenhouse sign.

After 25 years of use, the sign apparently fell into disrepair and required maintenance or replacement. In 1995, Plaintiff's daughter applied for a permit for the sign from the State of Tennessee Department of Transportation, which granted the permit. She then sought, through counsel, a building permit from the City of Sevierville to demolish and rebuild the aging sign. Mr. Butch Stott, Building Official for the City of Sevierville, advised Plaintiff's counsel that the sign would not qualify for a renovation permit. Because of Mr. Stott's representation, Plaintiff, prior to the filing of her lawsuit, never filed any application with the Defendant for a permit to demolish and rebuild the sign.

Plaintiff then filed this complaint seeking a declaratory judgment that she is "entitled to demolish and rebuild her outdoor advertising display, the same being a pre-existing, although presently non-conforming use of said property and therefore protected under the provisions of T.C.A. § 13–7–208." Plaintiff asked for a Writ of Mandamus ordering the Defendant to grant the Plaintiff "the permit for which she had applied," and for a permanent injunction restraining the Defendant from interfering with the demolition and rebuilding of the sign.

Defendant answered, admitting that Plaintiff's sign had been erected prior to the annexation of Plaintiff's property into the City of Sevierville, but stating that since Plaintiff had failed to apply for a permit, no permit had been denied, and that Plaintiff had failed to exhaust her administrative remedies. Defendant also answered that the sign was not a legal sign at the time of annexation, and therefore T.C.A. § 13–7–208, the Grandfather Statute, would not protect this sign from Defendant's zoning ordinance requirements.[1]

Both Plaintiff and Defendant filed motions for summary judgment. At a hearing on those motions, the Trial Court

---

1. T.C.A. § 13–7–208(b)–(e) does not apply to municipalities defined as "premier type tourist resorts" under T.C.A. § 67–6–103(a)(3)(B). Defendant does not raise the issue of exemption under this portion of the statute.

learned that Plaintiff had not filed an application for a permit and suggested that she do so. Soon after that hearing, Plaintiff filed a building permit application. By letter of April 2, 1998, Defendant advised Plaintiff that "we are going to hold this application in abeyance, and not act upon it until a determination has been made of the pending lawsuit." After trial on the merits, the Chancellor found that the sign was erected prior to the Defendant's zoning of the property and it is therefore a pre-existing, non-conforming use which Plaintiff is entitled to continue and expand under T.C.A. § 13–7–208. The Chancellor ordered Defendant to issue the permit.

### DISCUSSION

Defendant appeals, raising the following issues, which we quote:

1. Whether the Chancellor erred in failing to dismiss Plaintiff's complaint as premature inasmuch as Plaintiff failed to exhaust the administrative remedies available to her prior to filing the instant complaint?

2. Whether the Chancellor erred in holding that Plaintiff was entitled to the protection granted by T.C.A. § 13–7–208 with respect to the non-conforming use of the property at issue in this litigation?

Our review is *de novo* upon the record, accompanied by a presumption of the correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.; *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn.1998). A Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293 (Tenn.1997).

### *Exhaustion of Administrative Remedies*

◼ Defendant states that no application for a permit was made until after litigation commenced and that "the mere filing of an application, post-commencement of litigation, is insufficient to correct this fatal flaw in Plaintiff's case." We find this argument to be without merit. When the matter came to trial, the application had been filed, and Defendant had refused to act on it.

Defendant contends that "holding the late-filed permit application in abeyance pending outcome of this litigation is certainly not 'official action' in denial of the application." Further, Defendant contends that "Plaintiff has failed to appeal her claimed denial to the Sevierville Board of Zoning Appeals and thus should have been barred from bringing this cause of action." Defendant cites *State of Tennessee ex rel. G.E. Poteat v. Bowman, Building Commissioner and Regional Planning Commission of Williamson County,* 491 S.W.2d 77 (Tenn.1973) as controlling. In *Poteat,* the Plaintiff sought and was granted approval from the Regional Planning Commission for Williamson County, on March 14, 1972, for a site plan to build a shopping center. The approval was conditioned upon his submitting evidence in writing that the City of Franklin had agreed to furnish sewer services to the property and that construction of the project be undertaken not later than April 10, 1972. On March 22, 1972, he made application to Joe Bowman, Building Commissioner, for a building permit. Bowman denied the permit upon advice of the County Attorney. Plaintiff then filed a complaint in the Chancery Court for Williamson County, seeking a writ of mandamus to compel Bowman to issue the building permit. In his complaint, Plaintiff alleged that "an appeal to the Board of Zoning Appeals would be useless and unavailing as the reasons for denial of the permit are purely legal, and that the Board should be by-passed and the Court should take jurisdiction." The Trial Court dismissed Plaintiff's complaint because he had failed to exhaust his administrative remedies by appealing the decision of the Building Commissioner to the Board of Zoning Appeals. Our Su-

preme Court, in affirming the decision of the Trial Court, stated:

> The appeal being de novo, the Board of Appeals may substitute its judgment for that of the Building Commissioner. The Board may disagree entirely with him. The Board may see no impediments whatsoever and may grant the permit if they think it proper. Under such circumstances, it cannot be said that the remedy to review the action of the Building Commissioner was inadequate. To so hold, it would be necessary to assume, without any basis therefor, that the Board of Zoning Appeals would not do its duty. The presumption is to the contrary. It follows therefore, that the motion to dismiss the Complaint for a writ of mandamus should be sustained on the ground that the petitioner has not exhausted his administrative remedies.

*State ex rel. Poteat v. Bowman,* 491 S.W.2d at 80.

In the case before us, unlike *Poteat,* Defendant admits that holding the application in abeyance "is certainly not 'official action' in denial of the application." Instead, Defendant refused to take any action. Since there is no appealable decision which the Board of Zoning Appeals could have reviewed, the holding in *Poteat* does not help to resolve the case now before us.

The recent decision of this Court in *Thompson v. Department of Codes Administration,* 20 S.W.3d 654 (Tenn.Ct.App. 1999), provides further guidance on this issue. *Thompson* involved the refusal by the Defendant to issue building permits to the Plaintiff landowner. There the landowner filed his application with the Department, which denied it. The landowner then appealed to the Board of Zoning Appeals, but no hearing was held. The landowner then filed a "Petition for Writ of Certiorari, and for Mandamus and for Declaratory Judgment" in Chancery Court, which dismissed the petition. On appeal, this Court found, based upon the record before it, that "[T]he decision was not appealed to the Board of Zoning Ap-

peals...." *Thompson,* at 659 (Tenn.Ct. App.) Because the landowner, by abandoning his appeal to the Board of Zoning Appeals, had failed to exhaust his administrative remedies, this Court held that a writ of certiorari was not available to him. We then resolved the case as a declaratory action. *Id. See also, Thompson v. Department of Codes Administration,* Order on Petition to Rehear, filed December 3, 1999.

The distinction between *Thompson* and this case is evident. In the former, the landowner abandoned his appeal to the Board of Zoning Appeals and instead proceeded in Chancery Court. In the case now before us, while the landowner did not file her application for permit until after filing her lawsuit and upon the suggestion by the Trial Court, she then did attempt to proceed with the administrative process. Defendant, by its actions, brought the administrative process to a complete halt by its refusal to act on Plaintiff's application. Unlike the landowner in *Thompson,* once Plaintiff filed her application, she did not abandon the administrative process. Instead, the administrative process was abandoned by Defendant by its decision to hold the application in abeyance pending outcome of this litigation.

In *Thomas v. State Bd. Of Equalization,* 940 S.W.2d 563, 566 (Tenn.1997), our Supreme Court revisited the issue of failure to appeal an administrative decision to the agency's board of appeals before filing suit:

> Generally when a statute provides an administrative remedy, one must exhaust this administrative remedy prior to seeking relief from the courts. *Bracey v. Woods,* 571 S.W.2d 828, 829 (Tenn.1978); *Tennessee Enamel Mfg. Co. v. Hake,* 183 Tenn. 615, 194 S.W.2d 468 (1946). When not mandated by statute, exhaustion is a matter of judicial discretion. *Reeves v. Olsen,* 691 S.W.2d 527, 530 (Tenn.1985). The exhaustion doctrine serves to prevent

premature interference with agency processes, so that the agency may (1) function efficiently and have an opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of litigious interruption; and (3) compile a record which is adequate for judicial review. In addition, an agency has an interest in discouraging frequent and deliberate flouting of the administrative process. 2 Am.Jur.2d Administrative Law § 505 (1994). In Tennessee, exhaustion is not statutorily required unless the statute "by its plain words" requires it.

*Thomas v. State Bd. Of Equalization,* 940 S.W.2d at 566.

We conclude that the Trial Court had the discretion to hear Plaintiff's case after Defendant refused to make a decision on her application. In so holding, we acknowledge and apply the purposes of the exhaustion doctrine, as enumerated in *Thomas.* While Defendant is correct that Plaintiff did not file her application until after the filing of her lawsuit, she did file an appropriate application upon the Trial Court's suggestion that she do so. The Defendant simply refused to act on the application. Plaintiff did not "flout" the administrative process. Upon the Trial Court's suggestion, Plaintiff tried to comply with the administrative process. If any party flouted the administrative process, it was Defendant by refusing to act on Plaintiff's application despite the fact that she had filed the application at the urging of the Trial Court. We conclude that, under these facts, the complaint was properly before the Trial Court.

### The Grandfather Statute

■ Plaintiff argues that her sign is a pre-existing non-conforming use entitled to grandfathering under T.C.A. § 13–7–208. Defendant does not contest that if Plaintiff's sign was a permitted use when the property was annexed in 1978, T.C.A. § 13–7–208 is applicable and Plaintiff's

sign would be allowed under that section. Defendant instead argues the sign is not entitled to the protection of T.C.A. § 13–7–208 because the sign was not a legal permitted use under state law at the time of the annexation and zoning of Plaintiff's property by Defendant.

Pertinent portions of T.C.A. § 13–7–208 are as follows:

(b) In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of the land is undertaken by such industry or business.

(c) Industrial, commercial or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto in effect immediately preceding a change in zoning shall be allowed to expand operations and construct additional facilities which involve an actual continuance and expansion of the activities of the industry or business which were permitted and being conducted prior to the change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners. No building permit or like permission for construction or landscaping shall be denied to an industry or business seeking to expand and

continue activities conducted by that industry or business which were permitted prior to the change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners. (d) Industrial, commercial, or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto immediately preceding a change in zoning shall be allowed to destroy present facilities and reconstruct new facilities necessary to the conduct of such industry or business subsequent to the zoning change; provided, that no destruction and rebuilding shall occur which shall act to change the use classification of the land as classified under any zoning regulations or exceptions thereto in effect immediately prior to or subsequent to a change in the zoning of the land area on which such industry or business is located. No building permit or like permission for demolition, construction or landscaping shall be denied to an industry or business seeking to destroy and reconstruct facilities necessary to the continued conduct of the activities of that industry or business, where such conduct was permitted prior to a change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners.

█ A grandfather clause is defined as "an exception to a restriction that allows all those already doing something to continue doing it, even if they would be stopped by the new restriction." Black's Law Dictionary 629 (5th ed. 1979). A grandfather clause exception in a statute must be construed strictly against the party who seeks to come within the exception. *Teague v. Campbell County,* 920 S.W.2d

219, 221 (Tenn.Ct.App.1995), *perm. app. denied,* (Tenn.1996). Plaintiff as the party seeking the protection of the statute has the burden of proving that her sign is a pre-existing non-conforming use which qualifies for protection. *Lamar Advertising of Tennessee, Inc. v. City of Knoxville,* 905 S.W.2d 175, 176 (Tenn.Ct.App.1995), *perm. app. denied,* (Tenn.1995).

█ In *Rives v. City of Clarksville,* 618 S.W.2d 502 (Tenn.Ct.App.1981), this Court found that a plaintiff must make two threshold showings before invoking the protection of T.C.A. § 13–7–208:(1) that there has been a change in zoning (either adoption of zoning where none existed previously, or an alteration in zoning restrictions), and (2) that the use to which they put their land was permitted prior to the zoning change. Plaintiff satisfies the first required showing but falls short as to the second. It is implicit in the law that the "grandfathering clause" of any statute, resolution or ordinance contemplates a lawful activity being conducted which becomes a non-conforming use after passage of a statute, resolution or ordinance. *Chadwell v. Knox County,* 980 S.W.2d 378, 381 (Tenn.Ct.App.1998). It would be "a strained and illogical construction" to say the Legislature intended to grandfather a use which would put Plaintiff in a better position than she was in before the zoning became effective. *See Teague v. Campbell County,* 920 S.W.2d at 221.

Plaintiff's sign became a non-conforming use under state law in 1972 when the Legislature enacted the State Billboard Regulation and Control Act of 1972. It is undisputed that Plaintiff's sign was subject to the provisions of the State Billboard Regulation and Control Act of 1972. It is undisputed that Plaintiff did not obtain a permit from the State of Tennessee as required by the State Billboard Regulation and Control Act of 1972 until 1995. It is undisputed that when Plaintiff's property was annexed by Defendant in 1978, Plaintiff's sign was not legal and permitted under the State Billboard Regulation and

Control Act of 1972 as no permit had been obtained. In 1978, when Plaintiff's property was annexed by Defendant and became subject to Defendant's zoning ordinances, Plaintiff's sign was "a public nuisance and subject to immediate disposal, removal or destruction" pursuant to T.C.A. § 54–21–104 and § 54–21–105. Plaintiff's sign became a non-conforming use under Defendant's municipal ordinance in 1978 when Defendant's zoning was enacted. When a legal use becomes illegal by virtue of a zoning change, a grandfather statute may protect the use. In this case, however, illegal activity under state law became illegal under municipal ordinance by virtue of a zoning change. The grandfather statute cannot be applied to treat Plaintiff's sign as legal and permitted under state law in 1978. To hold otherwise would stand the grandfather statute on its head.

The fact that Plaintiff applied for and was granted a State permit in 1995 does not solve Plaintiff's problem. Had the use at issue been legal in 1978, it would have been grandfathered under T.C.A. § 13–7–208. Plaintiff's property was covered by the State Billboard Regulation and Control Act of 1972 prior to and when Plaintiff's property was annexed by Defendant. Therefore, Plaintiff's property was covered by a zoning restriction of the State of Tennessee. Plaintiff's sign was not a permitted use under state law at the relevant point in time, when Defendant annexed Plaintiff's property. Instead of being a legal and permitted use in 1978, Plaintiff's sign was a statutorily declared "public nuisance and subject to immediate disposal, removal or destruction." The grandfather statute can save only a use which was legal at the time the change in zoning occurred. In this case, the zoning change occurred in 1978, and the sign was not legal under state law when the zoning change occurred. Therefore, we hold that T.C.A. § 13–7–208 cannot be used to grandfather Plaintiff's sign as a pre-existing non-conforming use.

## CONCLUSION

For the reasons herein stated, the judgment of the Trial Court is reversed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for the collection of costs below. Costs on appeal are assessed against Appellee, Ruth M. Coe.

GODDARD P.J., and FRANKS, J., concur.