Dale PADUCH, Peter Paduch, Ben Paduch, Jr., Harriet Paduch, and State of Tennessee, on the relation of Dale Paduch, Peter Paduch, Ben Paduch, Jr. and Harriet Paduch, Plaintiffs–Appellees,

v.

CITY OF JOHNSON CITY, Defendant–Appellant.

Supreme Court of Tennessee, at Knoxville.

March 27, 1995.

Dick L. Johnson, Earl R. Booze, Johnson & Booze, Johnson City, Gwendolyn D. Burgess, Kingsport, and David M. Bowen, Johnson City, for plaintiffs-appellees.

Hent Herrin, Herrin & Herrin, Johnson City, for defendant-appellant.

## OPINION

REID, Justice.

The City of Johnson City asserts on this appeal that the Court of Appeals erred in sustaining the suit by appellees as an action to abate a nuisance and in awarding damages because the city did not pave a street abutting property owned by the appellees and refused to issue a building permit until the street was paved.

When the area which included the street and adjoining property was annexed by Johnson City in 1963, the street was, in the words of the trial judge, a country lane. After the property was annexed, the city posted a sign designating it "Quarry Drive" and initially provided minimum maintenance. Later, the city discontinued the maintenance but took no formal action to abandon it.

In May 1989, appellees, Dale Paduch, Peter Paduch, and Ben Paduch, Jr. (the Paduchs), who owned a tract of land abutting Quarry Drive, entered into a contract with the State of Tennessee whereby they agreed to construct on their tract certain improvements which would be leased to the state.

Upon application by the Paduchs, Johnson City refused to issue a building permit for the construction of the buildings until the Paduchs paved that portion of Quarry Drive providing access to the property. After some delay, the Paduchs paved a portion of the street at their expense and the building permit was issued.

The Paduchs filed suit against the city in chancery court, alleging that the city "refused to acknowledge" Quarry Drive as a city street, that Quarry Drive was a public street, that the city was obligated by law to pave and maintain it, and that they had been required "to expend much time, energy and effort and additional expense in obtaining a building permit ... [and] at their own expense to pave a portion of Quarry Drive." The Paduchs sought a writ of mandamus ordering the city to pave the remainder of Quarry Drive and they also claimed damages of $25,406 for their paving cost and $17,348 for the loss of rent caused by the delay in obtaining the building permit.

The trial court found that the writ of mandamus did not lie because the city denied it was obligated to pave Quarry Drive, thereby presenting disputed issues of fact and law. The city asserted that the "country lane," though designated Quarry Drive, was not, in fact, a public street, and, alternatively, city ordinances required the owners, as developers of unimproved property, to bear the cost

of paving the street providing access to their property. The trial court also held that the facts alleged did not constitute an action to abate a nuisance or a tort action for negligence.[1] The suit was allowed by the trial court to proceed as an action for declaratory judgment and incidental damages, if appropriate.

The trial court found that Quarry Drive was a public street, that the city was obligated to keep it, including that portion paved by the Paduchs, in good repair for the benefit of the travelling public, but that the city was under no obligation to pave any portion of the street. It further found, however, that the city should not have conditioned the issuance of the building permit requested by the Paduchs on their paving a portion of the street, and initially awarded damages in the amount of $25,406 for the paving cost and $17,348 for lost rent. On rehearing, the court found that, pursuant to Tenn.Code Ann. § 29–20–205(3), the city's governmental immunity has not been waived for the denial of a building permit, and rescinded the award of $17,348 for lost rent. Judgment was entered for $25,406.

The Court of Appeals affirmed the award of damages for the paving cost and reinstated the award of damages for the lost rent. That court characterized the action as a suit to abate a nuisance and held that "the chancery court has inherent jurisdiction to abate a nuisance and in the same suit award damages for injuries caused by the nuisance, notwithstanding the Tennessee Governmental Tort Liability Act."

■ Neither the parties nor the courts could agree as to the cause of action asserted in this case. However, Rule 8.06, Tennessee Rules of Civil Procedure, provides "all pleadings shall be so construed as to do substantial justice." The Advisory Commission Comments to this rule state:

The common-law rule that pleadings must be construed most strongly against the pleader was abolished by Section 2880 of the Code of 1858 (Now, T.C.A. § 20–702) [repealed]. Under the code, a plead-

ing was sufficient "when by a fair and natural construction, it shows a cause of action or defense." Rule 8.06 substitutes the end to be sought in place of specific rules of construction.

1 *Gibson's Suits in Chancery* § 276, p. 324 (1955) provides:

[I]f a bill contains allegations sufficient, if true, to entitle the complainant to some relief, the fact that the bill is inartificially drawn, or is misnamed by the draftsman, will not justify a motion to dismiss. In such a case, the Court judges the bill, not by its name, or want of technical precision in its frame and averments, but by its substance, and the matters of Equity it sets forth. While the proper name of the bill will not atone for defects of substance, yet proper substance will atone for a defect in the name. The name of a bill is mere matter of form, and is absolutely immaterial; and, whatever be its name, the Court will look at its allegations and prayers, and judge the bill thereby, and not by the particular name it may happen to bear.

The pleadings and the proof will determine the cause of action, if any, which has been asserted and proven.

### Writ of Mandamus

■ The trial court and the Court of Appeals correctly found that the complaint did not state a basis for the issuance of the writ of mandamus. The Court of Appeals relied upon *Peerless Constr. Co. v. Bass*, 158 Tenn. 518, 14 S.W.2d 732 (1929). As stated in *Hackett v. Smith County*, 807 S.W.2d 695, 698 (Tenn.Ct.App.1990):

For an act to be enforced by a writ of mandamus, the act must be purely "ministerial." *Peerless Construction Co. v. Bass*, 158 Tenn. 518, 520, 14 S.W.2d 732 (1929). If the right to have the act performed is doubtful, the right must be first established in some other form of action. Mandamus is a summary remedy, extraordinary in its nature, and to be applied only

---

**1.** There is no insistence on this appeal that the suit can be maintained as an action in negligence.

when a right has been clearly established. *Peerless,* 14 S.W.2d at 733.

In that case, the court held that mandamus was not the proper procedure to determine if the roads in a subdivision had become public roads, and that the writ lies only where there is a clear and specific legal right sought to be enforced. *Id. See also Foley v. Hamilton,* 603 S.W.2d 151 (Tenn.Ct.App.1980).

Neither the appellant nor the Court of Appeals mentioned *State ex rel. Matthews v. Metropolitan Gov't,* 679 S.W.2d 946 (Tenn. 1984). *Matthews* was an application for the writ of mandamus against Nashville–Davidson County to require the Metropolitan Police Department to remove obstructions from an alley, pursuant to an ordinance which imposed that duty upon the Police Department with regard to public alleys. Metropolitan Government denied the alley was public, and that issue was contested by the parties and decided by the Court. The Court's reasoning for denying Metropolitan Government's motion to dismiss was:

> The Metropolitan Police Department is not vested with discretion to determine whether a particular alley is a public alley. The defendants' denial that the alley is public does not render the right doubtful so as to prevent the application of the remedy of mandamus.

*Id.* at 948. The Court, nevertheless, affirmed the rule stated in *Peerless:*

> The proper use of the remedy of mandamus is well summarized in *Peerless Construction Co. v. Bass,* as follows:
>
> > "The office of mandamus is to execute, not adjudicate. It does not ascertain or adjust mutual claims or rights between the parties. If the right be doubtful, it must be first established in some other form of action; mandamus will not lie to establish as well as enforce a claim of uncertain merit. It follows therefore that mandamus will not be granted where the right is doubtful." (citations omitted.)

And further:

> We continue to adhere to the rule stated in *Peerless.*

*Id.*

▮ Notwithstanding the similarities between *Matthews* and the case before the Court, the rule stated in *Peerless* and reaffirmed in *Matthews* is an accurate statement of the purpose of the writ of mandamus and defines the jurisdiction of the writ. Its essential purpose is to execute a ministerial function, not adjudicate a legal issue. The relief sought in this case, the claim for damages for the cost of paving a portion of the street and for lost rent, is not consistent with the application for the writ of mandamus. Ordinarily, damages are not recoverable in mandamus proceedings. *Curtis v. State,* 163 Tenn. 220, 43 S.W.2d 391 (1931); 55 C.J.S. *Mandamus* § 342 (1948).

The decision by the Court of Appeals that the record does not support the issuance of the writ of mandamus is affirmed.

### Temporary Nuisance

▮ However, the record does not support the conclusion by the Court of Appeals that this is an action to abate a temporary nuisance.

In *Pate v. City of Martin,* 614 S.W.2d 46 (Tenn.1981), this Court considered whether the city's operation of a sewage lagoon could be enjoined as a temporary nuisance. The Court noted that "a nuisance extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." *Id.* at 47. The Court concluded that the lagoon was a temporary nuisance, in that it could be corrected by the expenditure of labor or money, and held the plaintiffs were entitled to an injunction requiring the city to take all responsible steps to terminate the emission of odors from the lagoon. The Court further held that the plaintiffs were entitled to damages for having been deprived of the use and enjoyment of their property. *Id.* at 48. In that case, the maintenance of the sewage lagoon was an affirmative act by the city which interfered with the plaintiff's use of their property.

In determining that the maintenance of a chain across the access road to bicycle trails in a park did not constitute a nuisance for

which the city could be held liable, the Court of Appeals, in *Dean v. Bays Mountain Park Ass'n,* 551 S.W.2d 702, 704 (Tenn.Ct.App. 1977), stated:

> The cases in Tennessee considering municipal liability for nuisance establish the following requirements: an inherently dangerous condition and affirmative action on the part of the municipality. Both elements must be established before a nuisance can be found and "the distinction must be preserved 'between negligence, an omission of duty, and a nuisance, or active wrong.'" *Powell v. City of Nashville,* 167 Tenn. 334, 69 S.W.2d 894 (1933).

The court in that case dismissed the complaint against the defendants on the ground that there was no evidence in the record to establish an inherently dangerous condition.

The record in the case before the Court contains no evidence to support either requirement. There is no evidence that the condition of the street was inherently dangerous, created any danger, or caused any harm, nor has the city been charged with any affirmative action that caused the plaintiffs harm.

Consequently, the record does not support the decision by the Court of Appeals that the suit was an action to abate a temporary nuisance.

### Declaratory Judgment

■ The trial court properly held that this is a suit for declaratory judgment. Tenn. Code Ann. § 29–14–102(a) (1980) provides:

> Courts of record within their respective jurisdictions shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

The primary issue in this case was whether the passageway in question was a public street. The trial court, in rendering its decision, stated, "the first question is whether or not Quarry Drive is a public way and therefore should be maintained by the city," and, after reviewing the evidence, concluded that it was a public street and the city was obligated to maintain it. The record shows that the city has accepted and is discharging the obligation to maintain Quarry Drive. That issue is not contested on this appeal.

Even though the trial court found that the city is obligated to maintain Quarry Drive, it also found that the city was under no obligation to pave any portion of the street. That declaration by the trial court is not contested on this appeal and is affirmed.

The issue contested is whether the Paduchs are entitled to damages for their paving cost and the lost rent claimed. The Uniform Declaratory Judgment Act, codified as Chapter 14 of Title 29 of Tenn.Code Ann., authorizes the Court to grant relief in addition to the declaration of rights. Tenn.Code Ann. § 29–14–110(a) (1980) provides:

> Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper.

The further relief authorized by statute may include the award of damages. 22A Am.Jur.2d *Declaratory Judgments* § 251, p. 890 (1988). The Paduchs' position is that their expenditure for paving a portion of Quarry Drive and the lost rent claimed were caused by the city's refusal to issue a building permit. The trial court found, and the Court of Appeals concurred, that, even though the city was under no obligation to pave Quarry Drive, the city was obligated to issue a building permit without first requiring that the portion of Quarry Drive providing access to the property be paved. Consequently, the city's only breach of duty to the Paduchs was its refusal to issue the building permit when requested.

Before the award of damages can be affirmed, two issues must be resolved—whether the damages awarded were "necessary or proper" within Tenn.Code Ann. § 29–14–110(a), and whether the award of damages is precluded by governmental immunity. However, in this case, the resolution of the second issue makes the first issue moot.

### Governmental Tort Liability Act

■ Governmental immunity for political subdivisions granted by the Governmental Tort Liability Act is waived only as specifically provided by the Act. Tenn.Code Ann. § 29–20–101, –407 (1980 & Supp.1994); *Kir-*

by v. Macon Co., 892 S.W.2d 403, 406 (Tenn. 1994). Immunity is removed for "injuries" caused by "the negligent operation by any employee of a motor vehicle or other equipment," [2] "a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway," [3] "the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement" [4] and "a negligent act or omission of any employee within the scope of his employment except if the injury … [a]rises out of the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization." [5] The basis of liability asserted by the Paduchs does not come within any of these categories of acts or omissions. The Paduchs do not allege "any injury" resulting from the activities of the city that can be the basis of liability. Consequently, immunity has not been waived. In addition, Tenn.Code Ann. § 29–20–205(3) specifically retains immunity for the refusal or failure to issue any permit, which obviously includes a building permit. The city is immune as a matter of law from any liability due to the initial denial of the building permit. Cf. Foley v. Hamilton, 659 S.W.2d 356, 360–61 (Tenn.1983).

■ In Pate v. City of Martin, a temporary nuisance case discussed above, the Governmental Tort Liability Act was not raised as a defense and was not discussed by the Court. However, in an earlier appeal of that case, Pate v. City of Martin, 586 S.W.2d 834 (Tenn.Ct.App.1979), the Court of Appeals concluded that the lawsuit involving the sewage lagoon was "not governed by the provisions of the Governmental Tort Liability Act." Id. at 836. Contrary to the decision of the Court of Appeals in that case, an action for damages resulting from the creation or maintenance of a temporary nuisance by a governmental agency may be allowed under the act. See Smith v. City of Covington, 734 S.W.2d 327 (Tenn.Ct.App.1985) (Per Curiam) (suit to recover damages caused by intermittent sewer backup); Hayes v. City of

Maryville, 747 S.W.2d 346 (Tenn.Ct.App. 1987) (claim for water runoff damage caused by increased grade of highway following improvements); Collier v. Memphis Light, Gas & Water Division, 657 S.W.2d 771 (Tenn.Ct. App.1983) (action for wrongful death and personal injuries allegedly caused by the city's construction, location and maintenance of a utility pole with high-voltage wires).

A cause of action under the Governmental Tort Liability Act may lie for activities of a governmental entity for which immunity has been waived even though such activities may also be the basis for the equitable action to abate a nuisance. The provisions of the Governmental Tort Liability Act are applicable to any action or defense asserted which comes within the terms of the Act.

### Estoppel

■ Although the city was not obligated to pave any portion of Quarry Drive, it did, in a sense, benefit from the Paduchs' expenditure of funds in paving a portion of the street. The equitable principle of estoppel has been used to remedy the unjust enrichment of a city. City of Lebanon v. Baird, 756 S.W.2d 236, 245 (Tenn.1988). However, "[p]ublic agencies are not subject to equitable estoppel or estoppel in pais to the same extent as private parties and very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions." Bledsoe County v. McReynolds, 703 S.W.2d 123, 124 (Tenn. 1985). In that case, the Court reversed the judgment of the courts below that Bledsoe County was liable to the defendants for improvements they made to a public road in the mistaken belief that it was a private road. The defendants sought reimbursement for improvements made without consultation with or permission from Bledsoe County. The Court stated:

It is significant to observe that in those Tennessee cases where estoppel was applied, or could have been applied, the public body took affirmative action that clearly

---

2. Tenn.Code Ann. § 29–20–202(a).

3. Tenn.Code Ann. § 29–20–203(a).

4. Tenn.Code Ann. § 29–20–204(a).

5. Tenn.Code Ann. § 29–20–205(3).

induced a private party to act to his or her detriment, as distinguished from silence, non-action or acquiescence. In the instant case defendants have nothing upon which to predicate the essential element of inducement, except silence and inaction.

\* \* \* \* \* \*

The courts have no authority to impose a duty upon public agencies to patrol roadways and monitor public property to see that private parties do not mistakenly improve public lands or facilities, nor can the courts sanction a doctrine that allows private parties to determine the nature, extent and cost of public works and public improvements. No authority has been cited nor have we found any that sanctions subjecting the public's property and rights to such hazards and obligations.

*Id.* at 125–26.

Like the property owners in *Bledsoe County,* the plaintiffs in the present case were not affirmatively induced by the city to improve a public street. The Paduchs paved Quarry Drive in order to obtain a building permit and in order to provide more convenient access to their property. The city's wrongful denial of the building permit did not obligate the city to reimburse the Paduchs for the cost of improvements made by them. These facts do not present the exceptional circumstances required to invoke equitable estoppel against a public agency.

Thus, the judgment of the Court of Appeals awarding damages against the city is reversed.

Costs are taxed against the appellees.

ANDERSON, C.J., DROWOTA and BIRCH, JJ., and O'BRIEN, Special Justice, concur.