# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

September 1, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

DOROTHY AND ROGER SMITH, )
 )
  Plaintiffs/Appellees, )
 ) Appeal No.
 ) 01-A-01-9804-CH-00207
VS. )
 ) Maury Chancery
 ) No. 92-319
MAURY COUNTY, )
 )
  Defendant/Appellant. )

APPEALED FROM THE CHANCERY COURT OF MAURY COUNTY
AT COLUMBIA, TENNESSEE

THE HONORABLE WILLIAM B. CAIN, JUDGE

RICHARD H. DINKINS
306 Gay Street
Suite 210
Nashville, Tennessee 37201
 Attorney for Plaintiffs/Appellees

WILLIAM H. DALE, JR.
P. O. Box 424
Columbia, Tennessee 38402-0424
 Attorney for Defendant/Appellant

REVERSED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
COTTRELL, J.

# O P I N I O N

The plaintiffs, a mother and her son owning adjoining farms on a rural road in Maury County, sued the county for a nuisance created when the county improved the road. The county argued that the exclusive remedy was for inverse condemnation, and that the one year statute of limitations barred the action. On appeal the county asserts, in addition to its original defense, that the damages awarded were beyond the range of reasonableness. We reverse the judgment below and remand for a new trial.

## I.

Mrs. Dorothy Smith owns sixty-three acres on Tanyard Hollow Road in Maury County. Her son, Mr. Roger Smith, owns seventy-seven acres adjoining his mother's property to the south. In 1989 or 1990 the Smiths and other landowners in the neighborhood petitioned the county to widen and improve the road. The neighbors agreed to convey to the county a fifty foot right of way without charge. The county began the work in the spring of 1990. They straightened the road and leveled it out, cutting dirt from the high places to fill the low places. In the course of the construction they destroyed two stone-lined underpasses, big enough to serve as cattle crossings and replaced them with metal culverts. The construction also altered the drainage in the area of the Smiths' property and the county left the cuts unprotected, causing extensive erosion in some places. The county substantially completed the project by September of 1990.

On May 29, 1992, Mr. and Mrs. Smith sued the county for creating a continuing nuisance on their properties. They also alleged that the county's actions amounted to an unlawful taking of their property without just compensation. The county filed an answer denying the material allegations of the complaint and raising the statute of limitations as a defense to some or all of the plaintiffs' claims. Mr. Smith

amended his complaint to add a claim for indemnity for the claims of his neighbor that water runoff from Mr. Smith's property was eroding the neighbor's property.

The jury returned a verdict for Mrs. Smith in the amount of $10,000 and for Mr. Smith in the amount of $100,000. The trial judge suggested a remittitur of $50,000 in Mr. Smith's case, which Mr. Smith accepted under protest.

## II.

## Temporary Nuisance vs. Inverse Condemnation

The county asserts that the plaintiffs' exclusive remedy was for inverse condemnation and that the one year statute of limitations in Tenn. Code Ann. § 29-16-124 had run when this action was filed. We admit that this issue causes us some trouble because the plaintiffs testified that the problems about which they complain were obvious from the time of the first rain after the completion of the project. Therefore, any damage resulting from a taking of the plaintiffs' property would have been barred after November of 1991. *See Hollers v. Campbell County*, 241 S.W.2d 523 (Tenn. 1951); *Jones v. Cocke County*, 420 S.W.2d 587 (Tenn. App. 1967).

The problem is compounded by a line of decisions in this state that seem to require a landowner to sue for inverse condemnation rather than nuisance, when a public construction project damages the remaining land. In *Monday v. Knox County*, 417 S.W.2d 536 (Tenn. 1967), the landowner sued the county for causing water to collect on the plaintiff's property, because the county failed to provide adequate drainage in the construction of a new highway. The court said the exclusive remedy was in inverse condemnation and the county was not liable for creating a nuisance. The court expressed its reason this way:

> Complainant here alleges the condition causing the damages can be easily corrected by making certain construction changes in the public road. Presuming this to be true the court has no authority to order such change in construction; for to do so would in effect be constructing

- 3 -

public roads by judicial order which would result in utter chaos.

417 S.W.2d at 537.

In *Pleasant View Utility Dist. v. Vradenburg*, 545 S.W.2d 733 (Tenn. 1977), plaintiffs sued a utility district for discharging thousands of gallons of water onto their land every three days. The complaint asked for an injunction to abate the nuisance. The Supreme Court held that the defendants' action of discharging water across the plaintiffs' property was a taking of a flowage easement and that the proper remedy was damages for the taking. The Court said:

> Having the power of eminent domain, any action of petitioner, in carrying out the purposes for which it was created, which destroys, interrupts, or interferes with the common and necessary use of real property of another is a "taking" of such property, and the landowner's remedy is an action for damages under the inverse condemnation statute (T.C.A. §23-1423), not injunctive relief; and, the action for damages is subject to the one year time limitation set forth in T.C.A. § 23-1424.

545 S.W.2d at 735.

On the other hand, the court in *Hayes v. City of Maryville*, 747 S.W.2d 346 (Tenn. App. 1987), held that the proper action for damages for an excessive runoff of water caused by the improvements to a city street was not an action for inverse condemnation but for a temporary nuisance. The court relied on *Pate v. City of Martin*, 614 S.W.2d 46 (Tenn. 1981), in which the city operated a sewage lagoon in such a manner that the odor made "habitation of dwellings in the vicinity almost impossible." Without discussing the question of whether nuisance was the proper theory for recovery, the Supreme Court concluded that the lagoon constituted a temporary nuisance and the measure of damages was, to a large extent, the diminished rental value of the property until the abatement of the nuisance. *Id.* at 48.

Following the decision in *Hayes*, the Supreme Court addressed the question again in *Paduch v. City of Johnson City*, 896 S.W.2d 767 (Tenn. 1995). Although the court decided that the plaintiffs had not proved the existence of a

- 4 -

nuisance, the court approved the result reached in *Hayes*. 896 S.W.2d at 772. We conclude, therefore, that a landowner whose property has been adversely affected by a county improvement has a choice of remedies against the county. If the adverse effect amounts to a taking of the owner's property, the proper remedy is inverse condemnation under the eminent domain statutes. *See* Tenn. Code Ann. § 29-16-123, 124. If, however, the effect on the landowner's property is a nuisance (described by the Supreme Court in *Pate v. City of Martin*, as "anything that annoys or disturbs the free use of one's property, or that renders its ordinary use or physical occupation uncomfortable." 614 S.W.2d at 47), the landowner may sue the county for the nuisance. The inverse condemnation claim will be barred one year after discovery of the taking.

A further complication in this case is the additional holding in *Hayes* which neither party addressed at the trial or in this court. That is the requirement that the nuisance remedy must be pursued in accordance with the Governmental Tort Liability Act (GTLA). The *Hayes* court said:

> Thus, it seems clear that Hayes' claim for water damage to the property is a claim for temporary nuisance. However, because the claim is against a municipality of the State of Tennessee, it must be adjudicated under the provisions of the Tennessee Governmental Tort Liability Act, T.C.A. §§ 29-20-101, et seq. (1980 and Supp. 1987).

747 S.W.2d at 350.

In *Paduch* the Supreme Court also approved this holding. The Court said:

> A cause of action under the Governmental Tort Liability Act may lie for activities of a governmental entity for which immunity has been waived even though such activities may also be the basis for the equitable action to abate a nuisance. The provisions of the Governmental Tort Liability Act are applicable to any action or defense asserted which comes within the terms of the Act.

896 S.W.2d at 772.[1]

---

[1]This action is about damages, and there can be no doubt that an action for damages against a municipality must be brought under the provisions of the GTLA. *See* Tenn. Code Ann. § 29-20-201(b). The plaintiff also prayed for an injunction, although they have not pressed that issue. We take no

*Hayes* was not the first decision on this point. The western section of this court held as early as 1983 that "the legislature left little if any room for doubt that actions against governmental entities for damages based on activities historically labeled 'nuisance' are now included in and covered by the act." *Collier v. Memphis, Light, Gas & Water Division*, 657 S.W.2d 771, 776 (Tenn. App. 1983). The same court followed that reasoning two years later in *Smith v. City of Covington*, 734 S.W.2d 327 (Tenn. App. 1985). In *Smith*, sewage intermittently backed up on the plaintiff's property because of an inadequate city sewer system. The court recognized that the city was maintaining a nuisance but found that, in order to maintain the action, the plaintiff must comply with the notice requirements of the Governmental Tort Liability Act. The eastern section of this court recently followed the western section in *Britton v. Claiborne County, Tenn.*, 898 S.W.2d 220 (Tenn. App. 1994).

## III.

### Damages

The plaintiffs introduced the testimony of a professional geologist and construction manager who described the effect of the road work on the Smiths' property. One of the primary changes was the destruction of the two underpasses that served the Smiths as cattle crossings. The county replaced the underpasses with metal culverts that were unsuitable for the passage of cattle. The witness estimated that the underpasses could be restored at a cost of $32,000.

The other major effect of the road work was the erosion of a hillside on Mr. Smith's property. The witness described how the cut into the slope by the county had exposed the ground and how the water had caused the hillside to slip in successive stages up to a distance of approximately seventy feet from the right of way. The total area involved was three to four acres of Mr. Smith's land. The witness

position on whether a plaintiff would also have to comply with the GTLA if the complaint sought only injunctive relief.

estimated that it would take $100,000 to restore the hillside. All the remedial measures recommended by the witness would cost a total of $238,000. The testimony was admitted over the defendants' objection.

Mr. Smith concedes that he had no vested right to the use of the underpass on his property. Therefore, he sustained no damages when it was replaced by a metal culvert. We think it was error to allow the jury to hear evidence that the underpass could be restored for a cost of $32,000.

As we have seen, the measure of damages for a temporary nuisance is basically the diminished rental value of the property affected by the nuisance. *Pate v. City of Martin*, 614 S.W.2d 46 (Tenn. 1981). The plaintiffs did not offer any proof of the value of their land, or its rental value. The county introduced evidence that the rental value of the property was fifteen to sixteen dollars per acre per year.

The plaintiffs argue that the damages should also include something for their discomfort, annoyance, and inconvenience. The county asserts that discomfort, annoyance, and inconvenience are merely factors that affect the rental value of the property. That seems to be the rule announced in *City of Nashville v. Wills*, 7 Higgins 97 (Tenn. Civ. App. 1916), where the court said: "there can be no recovery for mere discomfort, annoyance or mental distress occasioned by the nuisance, unless such discomfort, annoyance, etc., proceeds to the extent of injuring the usable or rental value of the premises." 7 Higgins at 109. The court deduced this rule from the Supreme Court's decisions in *Gossett v. So. Ry.*, 115 Tenn. 390 (1905) and *Terminal Co. v. Lellyett*, 114 Tenn. 368, 407 (1904). The plaintiffs rely on *Terminal Co. v. Jacobs*, 109 Tenn. 727, 739 (1902), in which the court approved the following jury instruction: "[the jury] might look, among other things, to such as occurred to the use of her property, as her residence or home, etc., taking into consideration in such assessment discomfort, annoyance, etc., which she may have suffered from smoke, etc."

We do not think the statement from *Terminal Co. v. Jacobs* is a clear endorsement of the rule that damages may be awarded for discomfort and annoyance separate and apart from the diminution of the rental value of the property. It seems to us that the discomfort and annoyance in the instruction refer to what happened "to the use of her property." Therefore, we hold that on remand the damages shall not include an award for discomfort, annoyance, and inconvenience separate and apart from the diminution of the rental value.

The judgment of the court below is reversed and the cause is remanded to the Circuit Court of Maury County for a new trial in accordance with the Tennessee Governmental Tort Liability Act. Tax the costs on appeal to the appellees.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
PATRICIA J. COTTRELL, JUDGE