IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 2000 Session

## R & D MARINA, INC., ET AL. v. ROANE COUNTY, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Roane County**
**No. 1,082     Hon. Frank V. Williams, III, Chancellor**

**FILED SEPTEMBER 22, 2000**

**No. E1999-02687-COA-R3-CV**

---

Plaintiffs, a marina and its owners, were holders of a 1996 lease from Roane County to build and manage a marina. Plaintiffs received a permit from TVA to operate the marina in 1997. Plaintiffs filed suit against Roane County and four boathouse owners, seeking a declaratory judgment that the marina was entitled to monthly rent from the individual Defendants from the date of the Roane County lease until their boathouses were removed from the leased premises. The boathouse owners were holders of prior TVA permits to moor boathouses within the same area which became the marina pursuant to the 1996 lease and 1997 permit. The Trial Court ordered the boathouse owners to pay rent to the marina and to remove their boathouses. We affirm the judgment of the Trial Court insofar as it ordered the individual Defendants to remove their boathouses. We hold the Trial Court erred in ordering the individual Defendants to pay rent starting from the date of the lease rather than the date of Plaintiffs' TVA permit. Accordingly, we modify the judgment of the Trial Court to reflect that Defendants owe rent to Plaintiffs from the date of Plaintiffs' TVA permit until the boathouses were removed. The judgment of the Trial Court is affirmed, as modified, and the case is remanded.

**Tenn. R. App. P. 3; Judgment of the Chancery Court Affirmed, as Modified, and Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J. and CHARLES D. SUSANO, JR., J., joined.

Gerald Largen, Kingston, Tennessee, and J. Scott McCluen, Harriman, Tennessee, for Appellants Sam Browder, Rhea Browder and J. T. Day.

Tom McFarland, Kingston, Tennessee, for Appellees Ron Billbury and Diane Billbury.

# OPINION

## Background

    R & D Marina, Inc. and Ron and Diane Billbury (Plaintiffs), brought this declaratory action seeking the Trial Court's assistance in removing boathouses owned by Sam Browder, Rhea Browder and J. T. Day (Defendants), among others, from property Plaintiffs asserted they have the right to control under a lease from Roane County and a permit from TVA, and for rent from the time Plaintiffs obtained that lease until the boathouses are removed. Defendants base their defenses on Tennessee Valley Authority (TVA) permit rights which they claim as superior because they were prior to those of the Plaintiffs.

    On September 14, 1960, TVA transferred title to the lakefront property at issue in this case to Roane County for use as a public park. That transfer document includes easement rights for the County to construct and maintain floats, floating boathouses, piers and docks on any exposed and unsubmerged land between the 750-foot contour boundaries of the fee and the waters of Watts Bar Lake. Roane County was given the right to regulate the use of the shoreline, including but not limited to, the prohibition and prevention of the construction, installation, or mooring of all boats, boathouses, floats, piers, and similar facilities on any part of the shoreline. TVA reserved the paramount right to enter upon any and all portions of the fee tract and any and all portions of the easement areas at any and all times for any TVA activities. Roane County was prohibited from constructing any structures or facilities which require TVA approval until the TVA Board of Directors approved the plans. Roane County was also required to regulate the use of the shoreline so as to preserve public access to Watts Bar Lake. TVA retained the right to inspect the property and buildings, structures, improvements, facilities and operations to insure compliance and to take possession "as if this conveyance had never been made" if this restriction were violated. The county was given the right to execute and issue permits, licenses and leases, so long as they would not materially affect the use of the land for the purposes for which the transfer was made.

    As stated, the transferred property could not be used without TVA permits approving specific uses.[1] TVA's regulations for "Approval of Construction in the Tennessee River System and Regulations of Structures," dated February 15, 1978,[2] established standards by which TVA grants such permits. Those regulations include the following definitions:

---

[1] Section 26a of The Tennessee Valley Authority Act of 1933, as Amended, provides that nothing can be constructed and thereafter operated or maintained along the Tennessee River system without prior approval of the TVA Board. This approval process results in the issuance of TVA permits.

[2] Mr. Robin Ferrell, a TVA employee, testified that this document became effective in 1978 and permits for existing boathouses, including those issued in 1972, were treated differently under prior federal regulations, but that the only difference applicable to this case was with regard to the type of flotation devices that could be used.

> *Existing* as applied to floating boathouses or other structures, . . . means those which were moored, anchored, or otherwise installed on, along or in a TVA reservoir on or before July 1, 1972.
>
> * * *
>
> *Floating boathouse* means a floating structure or facility, any portion of which is enclosed, capable of storing or mooring any houseboat or other vessel under cover.
>
> * * *
>
> *New* as applied to houseboats, floating boathouses, . . . means all houseboats, floating boathouses . . . other than existing ones.

Those regulations also provide:

> (b) All floating boathouses shall be moored:
>
> (1)    To mooring facilities provided by a commercial dock operator within the designated harbor limits of his dock; or
>
> (2)    To the bank of the reservoir outside the designated harbor limits of commercial boat docks, if the boathouse owner is the owner or lessee of the abutting property at the mooring location (or the licensee of such owner or lessee) and has requested and obtained from TVA, pursuant to § 1304.207, written approval authorizing mooring at such location.

§ 1304.04(b), Tennessee Valley Authority Approval of Construction in the Tennessee River System and Regulations of Structures, February 15, 1978.

TVA permits for the use of the property at issue by various entities date from January 1947, when Marina Plans were approved for the development of a marina. In April 1948, TVA permitted a fixed dock for Caney Creek Marina, and in March 1954, TVA permitted a concession building. Harbor limits were permitted for Caney Creek Marina in October 1972. On September 20, 1972, Sam Browder (Defendant) and Rhea Browder (Defendant) each filed applications, naming the applicant as Harriman Oil Company, for TVA approval of plans to moor two boathouses at Caney Creek Boat Dock. TVA approved the applications. On June 24, 1988, James T. Day (Defendant) filed an application with TVA to move his boathouse from elsewhere to the Caney Creek Boat Dock, and that application was approved.

The record does not indicate the date when Roane County first leased the property it held under the TVA transfer to individuals to operate a Caney Creek Marina, although it appears that a marina existed on those premises as early as 1948. Nevertheless, at some point in 1996, Roane County sought bids for a new lessee to operate the public facility for the County. Ron and Diane Billbury (Plaintiffs), operating as R & D Marina (Plaintiff), submitted a bid and were selected by the

County to lease the premises and operate the marina. They entered into a contract with Roane County on October 22, 1996. Although that contract provided authority from the County to operate the marina, Plaintiffs were still required by the above-cited TVA regulations to obtain a permit from TVA for their operations. Plaintiffs took possession of the existing boat dock in October 1996, and immediately began clean-up of the property and building of certain new facilities. Plaintiffs wanted several houseboats and boathouses removed from the premises so that they could proceed with their plans. Defendants, among others, refused to remove their boathouses from the marina. Plaintiff Ron Billbury met with Defendants and explained to them that they would have to move their boathouses when he got ready to place new boat slips there in the future. He offered to rent Defendants boathouse space in the marina for up to two years, until he was ready to expand his docks. Defendants refused to sign lease forms that Plaintiffs had prepared.

On February 5, 1997, Plaintiffs obtained a permit from TVA to operate the marina. That permit specifically superseded certain previously issued permits to operate Caney Creek Marina, but also specifically recited that it was "subject to any existing rights of third parties."[3] TVA also approved new and expanded harbor limits for Caney Creek Marina so that Plaintiffs could enlarge the facilities beyond those which the prior lessees had operated. The expanded harbor limits placed the boathouses belonging to Defendants within the harbor limits subject to Plaintiffs' control.

Plaintiffs sought assistance from Roane County in securing the removal of the offending boathouses, but to no avail. Plaintiffs then brought this suit on May 19, 1997, against Roane County and the boathouse owners, alleging that Roane County was responsible for enforcing their right to possession of the leased premises under the terms of their lease, and asking that the boathouse owners be required to remove the boathouses. Trial was held on July 7, 1998. After trial on the merits, the Trial Court found:

> The aforementioned grants of authority by the Tennessee Valley Authority to Roane County, Tennessee and the Plaintiffs override or supersede those permits which may be held by the individual Defendants in that the Defendants' permits are simply grants of authority to have such structures within the marina grounds.

The Trial Court further found:

> The Plaintiffs have the legal right and authority to assess reasonable rents upon the boathouse owners from the beginning of the lease on the 22nd day of October, 1996 and continuing each month thereafter until said boathouses are removed by the Defendants . . . .

---

[3]The Trial Court's Narrative Statement of the Evidence also states that Mr. Ferrell "conceded that the permit issued to the Plaintiffs specifically recited that [it] was subject to any other outstanding permits issued by TVA . . . ," but we are unable to find that specific provision in the Permit itself, which is Exhibit 15 of the appellate record.

The Trial Court granted Roane County's Motion for Directed Verdict. Plaintiffs have not appealed this verdict in favor of Roane County.

Defendants appeal and raise issues which we restate, for clarity, as: (1) whether a complaint for declaratory judgment permits the Trial Court to award a judgment for rent when rent was not specifically prayed for in that complaint; (2) whether TVA gave Roane County the right to control the property at issue; (3) whether Roane County's lease to Plaintiffs and the TVA permit to Plaintiffs revoked or superseded Defendants' permits or authorized Plaintiffs to cut off access to their boathouses, charge rent, and require Defendants to remove their boathouses; and (4) whether the rents demanded are reasonable and the date from which rents were ordered to be paid is correct.

## Discussion

Our review is *de novo* upon the record, accompanied by a presumption of the correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). The Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Defendants first raise the issue that the Trial Court could not properly award a judgment for rent because the Complaint was one for declaratory relief and rent was not specifically prayed for. They concede that Tenn. Code Ann. § 29-14-110(a) provides that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper." In *Paduch v. City of Johnson City,* 896 S.W.2d 767 (Tenn. 1995), the Paduchs brought suit against the city of Johnson City, seeking damages for their cost in paving a portion of a road abutting their property and for loss of rent due to a delay in obtaining building permits pending the paving. They also sought an order requiring the city to pave the remainder of the road. Our Supreme Court held that the Complaint was an action for declaratory judgment, although the issue contested was whether the Paduchs were entitled to damages for their paving cost and the lost rent claimed . The Court held:

> The Uniform Declaratory Judgment Act, codified as Chapter 14 of Title 29 of Tenn. Code Ann., authorizes the Court to grant relief in addition to the declaration of rights. Tenn. Code Ann. § 29-14-110(a) (1980) provides:
>
> > Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper.
>
> The further relief authorized by statute may include the award of damages. 22A Am.Jur.2d *Declaratory Judgments* § 251, p. 890 (1988).

*Paduch v. City of Johnson City,* 896 S.W.2d 767, 771 (Tenn. 1995). In this case, the Complaint was one for declaratory relief, but, as in *Paduch,* further relief may be granted as necessary or proper. Even without the instruction of *Paduch,* we agree with Plaintiffs that Defendants, by addressing the

claim for rents in their Answer, put the question at issue. See *Bedford County Hospital v. County of Bedford,* 304 S.W.2d 697, 701 (Tenn. Ct. App. 1957). Accordingly, we find Defendants' first issue to be without merit.

Defendants next raise the issues of whether Roane County had the right, under the 1960 conveyance from TVA, to control the property on which Defendants' boathouses were located, and whether that 1960 conveyance and the February 1997 TVA permit revoked or superseded Defendants' permits. Mr. Robert Ferrell, Project Leader in the Land Management Office of TVA, testified that, according to TVA policy, the two permits issued to Harriman Oil Company in 1972 may not be transferred to Sam Browder and Rhea Browder individually. Assuming this is true, and there is no evidence in the record to the contrary, the Browder permits may not be valid as Harriman Oil Company and not the Browders hold the permits, regardless of the later-issued permit to Plaintiffs. Sam Browder countered that he had been the long-term owner of Harriman Oil Company, but that "a few days before the trial he had sold his stock in the company to his son, John Browder." In short, neither of the Browders holds a TVA permit for his boathouse. The holder of the permits is Harriman Oil Company and not the Browders. This by itself would be sufficient to defeat the Browders' claim that they have a right to keep their boathouses at the location in dispute.

The Trial Court's Narrative Statement of the Evidence recited that Sam Browder argued in his testimony "that he had, in effect, a perpetual permit from TVA to occupy that space in the water pursuant to his 1972 permit and that he had no intention of every paying rent to the marina."[4] Rhea Browder's testimony was to the same effect. We find this argument unconvincing. Even if the Browders were the permit holders, nothing in the record indicates an intention by TVA to issue a permit to Defendants which could not be superseding by any later circumstances. We cannot imagine such an intention by TVA, and we find no language in any of the property transfers, leases, permits or regulations in the record that limits TVA's right to issue a later permit which, by its issuance, necessarily supersedes an earlier permit. This is what TVA did here.

Defendants further argued that their boathouses were moored to the bottom of the lake, not to the water's edge, and thus were outside the property TVA had leased to Roane County. The Trial Court did not find this argument persuasive, and neither do we. As stated, the 1960 document transferring the property from TVA to Roane County provided that Roane County was given the right to regulate the use of the shoreline, including but not limited to, the prohibition and prevention of the construction, installation, or mooring of all boats, boathouses, floats, piers, and similar facilities on any part of the shoreline. The TVA Regulations implementing such transfers require that boathouses must be moored in commercial docks unless they are moored adjacent to land which is owned by the boathouse owners (TVA Approval Regulations, § 1303.204(b)). This regulation seems plainly designed to prevent the scenario in this case: private boathouses being moored to the bottom of the lake, not adjacent to property owned by the boathouse owners, and not under the control and supervision of any marina. Furthermore, Mr. Ferrell of TVA testified that,

---

[4]TVA Regulations require boathouses to be moored only within commercial docks or adjacent to property owned by the boathouse owners.

"under TVA's rules and regulations, a permit for water use facilities [e.g., boathouses] can only be issued to the owner of land abutting this retained strip of land, so that permits issued as this site have to be to the County, to be used by a licensee of the County. The Plaintiff is the County's licensee."[5] The Defendants have not alleged that they now or ever owned the land adjacent to the sites where their boathouses were moored. Mr. Ferrell also stated, on cross-examination, that to the best of his knowledge, the permits to Harriman Oil Company and J. T. Day were "still in full force and effect." However, applying the TVA Approval Regulations and the terms of the TVA transfer to Roane County, we find that, while the permits issued to Harriman Oil Company and Mr. Day were not formally rescinded by TVA, they were necessarily superseded when TVA granted a conflicting permit to Plaintiffs to operate the commercial dock on the premises which extended the harbor limits to include the property on which the Defendants' boathouses were moored.[6] To find otherwise would defy common sense. If Defendants' boathouses can be moored only within a commercial marina since the Defendants do not own the adjacent land, and the commercial marina is properly leased by Roane County to Plaintiffs and permitted by TVA to Plaintiffs, then Defendants' boathouses can be moored within that marina only by the acquiescence of and under the control of Plaintiffs.

While not necessarily dispositive, there is another reason that Plaintiffs must have authority to control the boathouses on their leased and permitted premises. The 1960 transfer document to Roane County requires the County to insure that the boathouses moored on the transferred premises are maintained in good repair and up to TVA standards. The thirty-year lease from Roane County to the Plaintiffs also requires that Plaintiffs meet all TVA standards for health and safety and that Plaintiffs "shall have the primary responsibility for ensuring that any sublessees . . . operate and maintain the premises in such a manner." Plaintiffs are also required under the lease to make sure that all boats moored at the facility meet "all applicable federal, state or local regulations." At trial, Mr. Ferrell testified that he had inspected the boathouses and found that, in their dilapidated condition, they did not comply with C.F.R.§ 18, Section 1304.05 and 1304.204 and others. He opined that his office had taken no action against them as of the time of trial, "because they were part of the site leased to Roane County and then subleased for commercial operations." Plaintiffs cannot meet their contractual or regulatory obligations unless they can control the boathouses moored at their marina, including the boathouses owned by these Defendants.

Having determined that Plaintiffs had the right to require the offending boathouses be removed from their leased and permitted premises, we next address the issues raised by Defendants related to the rents charged by Plaintiffs for mooring fees before the boathouses were removed.[7] Defendants raise the issues of whether the rents demanded by Plaintiffs are reasonable and whether the Trial Court properly determined the date from which rents were due. As to the

---

[5]From the Trial Court's Narrative Statement of the Evidence.

[6]TVA is not a party to this suit, and no one has argued that TVA did not have authority to grant the permit to the Plaintiffs.

[7]The parties advised at oral argument that all of the boathouses in question had been removed.

reasonableness of the rents, the testimony shows that Plaintiff Ron Billbury testified that the rents he charged were "customary, reasonable and within acceptable standards of prices charged by other marina operators in the area." The monthly rent charged for these Defendants' boathouses appears to be the same as charged for other boathouses moored within the marina. There was other evidence that Plaintiffs had never operated a marina until they obtained this lease from Roane County, and that Plaintiff Ron Billbury simply set the monthly rent at $81.50 based on his opinion of the rental value of the marina space. When a Trial Court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the Trial Court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn. 1999). The Trial Court found the rents to be reasonable, and the evidence does not preponderate against this finding.

The Trial Court ordered Defendants to pay rent for their mooring spaces from October 22, 1996, when Plaintiffs entered into their lease with Roane County. Defendants argue that, if any rent is due, such rent cannot be assessed for mooring fees prior to February 5, 1997, when Plaintiffs obtained the required permit from TVA to operate the marina. We agree. The property transferred from TVA to Roane County could not be used without TVA permits approving the specific uses. Nor could that same property, when leased to Plaintiffs, be used by Plaintiffs without TVA permits certifying that those specific uses met the standards set forth in "Approval of Construction in the Tennessee River System and Regulations of Structures." Therefore, Plaintiffs had no right to operate the marina, or to collect rents, until the TVA permit was issued to them. Accordingly, we modify the Judgment of the Trial Court to award rents to Plaintiffs from Sam Browder, Rhea Browder and J. T. Day, beginning on February 5, 1997, until the date each of those Defendants removed his boathouse from Plaintiffs' marina.

## Conclusion

The Judgment of the Trial Court is affirmed, as modified, and the case is remanded to the Trial Court for further proceedings to determine the amount of rent due Plaintiffs from Defendants, and for such further proceedings as may be required, if any, consistent with this Opinion. Costs on appeal are taxed 50% to the Plaintiffs (R & D Marina, Inc., et al.), and 50% to the Defendants (Sam Browder, Rhea Browder and J. T. Day) and their sureties.

D. MICHAEL SWINEY, JUDGE