IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 12, 2015 Session

## 3659 MENDENHALL INC., ET AL. v. CITY OF MEMPHIS, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH1210601      Walter L. Evans, Chancellor**

_____

**No. W2014-02401-COA-R3-CV – Filed October 27, 2015**
_____

This is a declaratory judgment action.  Appellant's application for a permit to erect a sign was denied by Appellee, the Memphis and Shelby County Office of Construction Code Enforcement. Appellant petitioned the trial court to declare that Code Enforcement was estopped from denying the permit.  As grounds for estoppel, Appellant cites a letter issued to the Appellant five years earlier by an assistant county attorney when Appellant sought advice on erecting multiple signs at its location.  After a hearing, the trial court granted the Appellees' motion for involuntary dismissal.  We affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed and Remanded**

KENNY ARMSTRONG, J. delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Rex L. Brasher, Memphis, Tennessee, for the appellant, 3659 Mendenhall, Inc.

J. Michael Fletcher, Memphis, Tennessee, for the appellees, Memphis and Shelby County Office of Construction Code Enforcement and Shelby County, Tennessee.

## OPINION

### I. Background

Stephen Cooper purchased the property located at 3659 Mendenhall Road, Memphis,

Tennessee ("the Property") sometime in 1985 or 1986. The Property is landlocked; however, it holds an easement for "perpetual ingress and egress." Part of this easement is a "grassy strip" on which both the Property's previous owners and Mr. Cooper have erected signs advertising their respective businesses. The business located on the Property has undergone several name changes since Mr. Cooper purchased the Property. Each time the name of the business changed, Mr. Cooper applied for and obtained a new sign permit from the Memphis and Shelby County Office of Construction Code Enforcement ("Code Enforcement"). In 2003, a storm, locally referred to as "Hurricane Elvis," destroyed Mr. Cooper's sign. Mr. Cooper obtained a permit for a new sign from Code Enforcement and hired a contractor to replace the sign. Instead of removing the original sign's concrete foundation, the contractor installed a new concrete foundation for the replacement sign. This resulted in the replacement sign being moved approximately six inches from its original location.

After Mr. Cooper erected the replacement sign, First American Bank, the owner of property adjacent to the easement, notified Mr. Cooper that the sign was partially located on the bank's property. First American Bank had no objection to the location of the sign and allowed Mr. Cooper to keep the sign where it was located. On February 22, 2005, Mr. Cooper transferred the Property by quit claim deed to his company, 3659 Mendenhall Inc. ("Appellant").[1] On or about August 22, 2006, Robert Blake purchased First American Bank's property and notified Mr. Cooper that the replacement sign was located on his property. Mr. Cooper disputed Mr. Blake's assertion and claimed that the sign was located solely on the easement. A survey subsequently obtained revealed that the Appellant's sign encroached onto Mr. Blake's property by six inches. In October of 2007, Appellant's attorney and Mr. Blake's attorney met with J. Carter S. Gray, who was an assistant county attorney assigned to Code Enforcement, along with other Code Enforcement staff to evaluate possible placement of two signs at the Mendenhall location.

On October 18, 2007, Mr. Gray wrote both parties a letter in which he detailed "[i]n the meeting we agreed to determine the allowable square footage that would be available to be used by [Appellant] for a sign it would re-establish at the location of the existing sign on this property." This letter also noted that the replacement sign would "be on the property that would be owned or leased by [Appellant] as part of the existing parcel on which the club is located in order to prevent it from being considered an off-premises sign." The letter also observed that "[o]ff-premises advertising signs are not allowed in the zoning district that contains [the Property]."

Despite this meeting and Mr. Gray's letter, Appellant and Mr. Blake could not reach an agreement regarding signage, and, on March 13, 2008, Mr. Blake had Appellant's sign

---

[1] Although Entertainment Productions, Inc. was a party during trial, it did not participate in this appeal.

removed from his property. Subsequently, on May 21, 2008, Appellant filed suit against Mr. Blake and his company, Airport Security, LLC, seeking lost profits, damages for destruction of the sign, and a declaration that the sign was located on a perpetual easement held by Appellant.

Meanwhile, in August of 2010, the Memphis City Council and the Shelby County Board of Commissioners adopted the Unified Development Code ("UDC"), which became effective on January 1, 2011. On July 22, 2011, Appellant and Mr. Blake executed a "Sign Easement Agreement," whereby Mr. Blake granted Appellant an easement on his property to erect a sign. In an effort to comply with the advice provided in the October 2007 letter, the parties entered into a lease for the disputed property. Appellant then dismissed its suit against Mr. Blake and, in March of 2012, applied to Code Enforcement for a permit to build a new sign. Code Enforcement denied the permit, stating that the location of the proposed sign would classify it as an "off-premises" sign, which is prohibited under the UDC.

On June 28, 2012, Appellant filed a petition for a writ of mandamus and, alternatively, for declaratory judgment against the City of Memphis, Shelby County, and Code Enforcement. Appellant's complaint requested that Code Enforcement be required to issue a permit for a new sign, or in the alternative that the trial court declare that Code Enforcement promised, through Mr. Gray's letter of October 2007, to issue a permit for a new sign at Appellant's Mendenhall location. On July 19, 2012, Shelby County and Code Enforcement (together, "Appellees") filed a motion to dismiss. In a consent order dated March 8, 2013, Appellant agreed to dismiss its claims for damages, and Appellees agreed to strike their motion to dismiss. The trial court heard the matter on September 18, 2014. At the hearing, Appellant agreed to dismiss the City of Memphis as a party and also dismissed its petition for a writ of mandamus and any damages arising from the mandamus action, proceeding only on the declaratory judgment action.[2] On October 30, 2014, the trial court entered an order dismissing the City of Memphis as a party and granting the Appellees' motion for involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41.02.[3]

---

[2] Because the City of Memphis was dismissed from the case, it is not a party to this appeal.

[3] Tennessee Rule of Civil Procedure 41.02(2) states:

> After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiffs evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court grants the motion for involuntary dismissal, the court shall find the facts specially and shall state

3

## II. Issues

We restate the dispositive issues in this case as follows:[4][5]

I.         Whether the trial court erred when it concluded that Appellant's proof did not establish estoppel against Shelby County and Code Enforcement.

II.        Whether the trial court erred when it concluded that the Appellant was not entitled to have a sign "grandfathered in."

III.      Whether the trial court failed to comply with the requirements of Rule 41.02 in granting Appellees' motion for involuntary dismissal.

## III. Standard of Review

"The standard of review of a trial court's decision to grant a Rule 41.02 involuntary dismissal is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure." *Boyer v. Heimermann*, 238 S.W.3d 249, 254-55 (Tenn. Ct. App. 2007) (quoting *Building Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007)). "Accordingly, we must review de novo, presuming that the trial court's factual findings are correct unless the evidence preponderates otherwise." *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 414 (Tenn. 2013). "The presumption of correctness afforded by Tenn. R. App. P. 13(d) only applies to findings of fact, not to conclusions of law. We review a trial court's resolution of legal issues without employing a presumption of correctness, and we reach our own independent conclusions." *Id.* "When reviewing a trial court's grant of a Tenn. R. Civ. P. 41.02(2) motion to dismiss, the reviewing court must affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or the trial court's decision is based upon an error of law that affects the outcome of the case." *Id.*

## IV. Analysis

## A. Estoppel

---

separately its conclusions of law and direct the entry of the appropriate judgment.

[4] Appellant's brief raised the issue of whether the trial court entered an order adjudicating all the issues in the case because it did not address the Appellant's breach of contract claim against the Appellees. However, Appellant's counsel conceded during oral argument that this was in error, because the Appellant dismissed its breach of contract claims during litigation.

[5] Appellees' brief raised the issue of whether Appellant was required to exhaust its administrative remedies before bringing suit in the trial court. Because of our disposition of the appeal, this issue is pretermitted.

Appellant asserts that the trial court erred in granting the Appellees' motion for involuntary dismissal because the trial court incorrectly concluded that the Appellant could not rely on Mr. Gray's October 7, 2007 letter to invoke the doctrine of estoppel. The trial court found that Appellant did not prove "extraordinary circumstances," which is required to invoke estoppel against a municipality or its agents. Appellant argues that it has proven that estoppel should apply to Shelby County because it showed at trial that extraordinary circumstances applied in this case. Appellees argue that Appellant did not demonstrate extraordinary circumstances, and, therefore, cannot invoke the doctrine of estoppel.

"Generally speaking, the doctrine of estoppel is not favored under our law." *Sexton v. Sevier County*, 948 S.W.2d 747, 750 (Tenn. Ct. App. 1997). While the doctrine of estoppel may be invoked against a county, "very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions." *Id.* (quoting *Paduch v. City of Johnson City*, 896 S.W.2d 767, 772 (Tenn. 1995)).

> In order to invoke the doctrine of equitable estoppel [against a county], a party must show the following:
>
> > (1)    his or her lack of knowledge and of the means of knowledge of the truth as to the facts in question;
> > (2)    his or her reliance upon the conduct of the party who is estopped; and
> > (3)    action by the invoking party based thereon of such a character as to change that party's position prejudicially.

*Id.* at 751; *see also Faust v. Metropolitan Government*, 206 S.W.3d 475, 497-98 (Tenn. Ct. App. 2006). "It is the burden of the party claiming estoppel to prove each of the above elements." *Sexton*, 948 S.W.2d at 751.

In its brief, Appellant argues that it made a prima facie case to invoke estoppel against the Appellees. With regard to the first element, Appellant argues that it had inferior knowledge because it could not know that the Appellees would not "honor" Mr. Gray's letter, nor could it know that the zoning code would change. These circumstances, however, do not rise to the level of a lack of knowledge and the lack of the means to gain such knowledge. Because parties are "presumed to know the law," *Burks v. Elevation Outdoor Advertising, LLC*, 220 S.W.3d 478, 492 (Tenn. Ct. App. 2006), Appellant cannot claim ignorance of the applicable codes regarding the sign. Shelby County's adoption of the UDC is a matter of public record, and, therefore, Appellant had the means with which to ascertain whether the UDC would allow the issuance of a permit for its intended sign. Because parties are presumed to know the law, they may not rely on ignorance of the law to prove the first

5

element of estoppel against a county when the law dictates a result contrary to their position. *See Sexton*, 948 S.W.2d at 751. Appellant's argument that it could not foresee the adoption of the UDC does not demonstrate a "lack of knowledge and of the means of knowledge of the truth as to the facts in question." When a party cannot meet the first element of estoppel, it cannot proceed on a claim of estoppel. *See id.* Therefore, we conclude that the Appellant did not make a *prima facie* showing so as to invoke estoppel against the Appellees.

Appellant also argues that it was placed in a position of inferior knowledge because it could not foresee Mr. Gray's successor's refusal to "honor" the letter written by Mr. Gray. We note, however, that Appellant waited four years after the sign's removal before attempting to obtain a permit for a new sign. During that time, Memphis and Shelby County adopted the UDC. Appellant does not dispute that the UDC does not allow for an off-premises sign. Indeed, Appellant conceded at the hearing that its sign would be considered an off-premises sign under the current UDC. Appellant, of course, is presumed to know the law. Appellant has not claimed, nor does the record demonstrate, that Code Enforcement acted contrary to the requirements of the UDC in denying the application for a sign permit at the proposed location. Appellant is charged with knowledge of the UDC's requirements for erecting a new sign, and its argument that it was in a position of inferior knowledge regarding the UDC is simply unpersuasive. Additionally, Mr. Gray's letter of October 18, 2007 never assured Appellant that under the code in existence, a permit would be issued upon Appellant's timely application, and the letter does not even address the current UDC which Appellant is required to comply with based on the date of its application for a sign permit. Therefore, we affirm the trial court's finding that the Appellant failed to prove facts sufficient to rely on the doctrine of estoppel.

## B. "Grandfathering" of the Sign

Appellant argues that the trial court erred when it concluded that a new sign could not be "grandfathered in." Specifically, Appellant argues that because the UDC was never entered into the record, the trial court could not have used the UDC to conclude that an off-premises sign could not be "grandfathered in." Appellees argue that, under the UDC, the Appellant may no longer have a sign that is "grandfathered" in as an off-premises sign because the Appellant did not reestablish its sign within six months of its destruction.

Regardless of whether the UDC was presented to the trial court, upon review of the record, we note that the Appellant did not present any proof regarding whether a sign could be "grandfathered." The proof presented at the hearing focused solely on the history of the signage at the property and Mr. Gray's October 2007 letter. Furthermore, there is no existing sign to "grandfather." The record reveals that there has been no sign on the property in question since March 13, 2008. Furthermore, the parties do not dispute that Appellant has not

6

attempted to erect a new sign. Moreover, Appellant did not apply for a permit for a new sign until March of 2012. "Equity aids the vigilant, not those who sleep upon their rights." William H. Inman, GIBSON'S SUITS IN CHANCERY, § 25, pg. 29 (7th ed. 1988). Appellant took no action, either through reconstruction or application for a sign permit from Code Enforcement, to reestablish its sign until sometime in March of 2012, four years after Mr. Blake removed the sign. Thus, we cannot conclude that the trial court erred when it concluded that the law does not allow the Appellant to erect a new, off-premises sign that would be "grandfathered" in under the UDC.

### C. Trial Court's Findings of Fact

Appellant argues that the trial court erred because it did not comply with the requirement of Tennessee Rule of Civil Procedure 41.02(2) that if the trial court "grants the motion for involuntary dismissal, the court shall find the facts specially…." Appellant argues that the trial court's findings of fact were so minimal that they did not comply with the Rule 41.02(2) requirement. Appellees, on the contrary, argue that the trial court's findings were sufficient for the purpose of concluding that the Appellant did not make a *prima facie* case.

We acknowledge that the trial court's findings of fact are sparse. Specifically, the trial court found that: (1) the Appellant did not timely seek an application for a new sign; (2) Mr. Gray did not have the authority to bind Shelby County or the Office of Code Enforcement; (3) the Appellant did not reasonably rely on Mr. Gray's letter; and (4) the Appellant failed to demonstrate the existence of extraordinary circumstances sufficient to invoke estoppel. Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Lake v. Haynes,* No. W2010–00294–COA–R3–CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). However, this Court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012) (quoting *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)). Given the nature of this case and the record, we conclude that the basis of the trial court's decision in this case is readily ascertainable.

Appellant brought a declaratory judgment action, asking the trial court to declare that it could rely on Mr. Gray's letter as an agreement by Code Enforcement to issue a permit for a sign once certain requirements were met. The trial court determined that Mr. Gray could not have made such an agreement and that Appellant did not prove the necessary elements for promissory estoppel. Based on these determinations, the trial court granted the Appellees' motion for involuntary dismissal. We note that the trial court's factual findings

negate the existence of "extraordinary circumstances," which is required to invoke estoppel against Shelby County and Code Enforcement. Although we caution the trial court to make more detailed findings of fact in the future for the purposes of complying with Tennessee Rule of Civil Procedure Rule 41.02(2), we affirm its ultimate decision based upon our review of the record.

## V. Conclusion

For the reasons stated above, we affirm the trial court's judgment. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed to the Appellant, 3659 Mendenhall, Inc., and its surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE